UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
(AT DAYTON)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| | ) | Case No. _____ |
| vs. | ) | Judge _____ |
| | ) | Magistrate _____ |
| 3M COMPANY, *et al.*, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |
| | ) | |

REMEDIAL DESIGN/REMEDIAL ACTION (RD/RA) AND
DE MINIMIS CONSENT DECREE

TABLE OF CONTENTS

Page

I. BACKGROUND ................................................................................................. 1
II. JURISDICTION ............................................................................................... 5
III. PARTIES BOUND ......................................................................................... 5
IV. DEFINITIONS ............................................................................................... 6
V. GENERAL PROVISIONS ............................................................................... 12
VI. PERFORMANCE OF THE WORK BY SETTLING PERFORMING DEFENDANTS ...... 16
VII. REMEDY REVIEW ...................................................................................... 25
VIII. QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS ................................. 25
IX. ACCESS AND INSTITUTIONAL CONTROLS ................................................. 27
X. REPORTING REQUIREMENTS ...................................................................... 34
XI. EPA APPROVAL OF PLANS, REPORTS, AND OTHER DELIVERABLES ................... 36
XII. PROJECT COORDINATORS ......................................................................... 38
XIII. PERFORMANCE GUARANTEE .................................................................... 39
XIV. CERTIFICATION OF COMPLETION ............................................................ 48
XV. EMERGENCY RESPONSE ............................................................................ 50
XVI. PAYMENTS FOR RESPONSE COSTS .......................................................... 51
XVII. INDEMNIFICATION AND INSURANCE ...................................................... 59
XVIII. FORCE MAJEURE .................................................................................... 61
XIX. DISPUTE RESOLUTION ............................................................................. 64
XX. STIPULATED PENALTIES ........................................................................... 67
XXI. COVENANTS BY PLAINTIFF ..................................................................... 73
XXII. COVENANTS BY SETTLING DEFENDANTS AND SETTLING FEDERAL AGENCIES ............................................................................................................ 79
XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION ........................................... 83
XXIV. ACCESS TO INFORMATION ..................................................................... 85
XXV. RETENTION OF RECORDS ........................................................................ 87
XXVI. NOTICES AND SUBMISSIONS ................................................................. 89
XXVII. RETENTION OF JURISDICTION .............................................................. 91
XXVIII. APPENDICES ......................................................................................... 91
XXIX. COMMUNITY INVOLVEMENT ................................................................ 92
XXX. MODIFICATION ........................................................................................ 93
XXXI. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ........................... 93
XXXII. SIGNATORIES/SERVICE ......................................................................... 94
XXXIII. FINAL JUDGMENT ................................................................................ 95

i

## I. **BACKGROUND**

A.      The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B.      The United States in its complaint seeks, *inter alia: (1)* reimbursement of costs incurred by EPA and the Department of Justice ("DOJ") for response actions at the Lammers Barrel Superfund Site in Beavercreek, Ohio, together with accrued interest; and (2) performance of response actions by the defendants at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 ("NCP").

C.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of Ohio (the "State") on or about May 10, 2012, of negotiations with potentially responsible parties ("PRPs") regarding the implementation of the remedial design and remedial action for the Site, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Decree.

D.      In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the United States Department of Interior and the National Oceanic and Atmospheric Administration Office of Natural Resource Restoration (collectively, the "Natural Resource Trustees") on or about May 10, 2012, of negotiations with PRPs regarding the release of hazardous substances that may have resulted in injury to the natural resources under federal trusteeship and encouraged the trustees to participate in the negotiation of this Consent Decree.

E.      The defendants that have entered into this Consent Decree ("Settling Defendants") do not admit any liability to Plaintiff arising out of the transactions or occurrences

1

alleged in the complaint, nor do they acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment. Settling Federal Agencies do not admit any liability arising out of the transactions or occurrences alleged in any counterclaim asserted by Settling Defendants.

F.      Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List ("NPL"), set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on September 29, 2003, 68 Fed. Reg. 55875.

G.      On March 22, 1990, EPA entered into an administrative agreement with Lamson & Sessions, the Ford Motor Company, General Motors Corporation, Navistar International, Monsanto, Specialty Papers Company, Aluminum Company of America, Virginia Lammers, and Anthony Kohnen under CERCLA Section 122(h), 42 U.S.C. § 9622(h), to resolve certain past costs incurred in connecting nine residences at the Valleywood Subdivision Site (SF ID no. 053H) to the public water supply.

H.      In response to a release or a substantial threat of a release of hazardous substances at or from the Site, certain of the Settling Defendants and/or other PRPs at the Site commenced in April, 2002, a Remedial Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430 pursuant to the terms of a separate Administrative Order on Consent entered into with EPA on April 9, 2002, as amended (the "2002 AOC"). The Respondents to the 2002 AOC also have paid the EPA's oversight costs for the RI/FS in the amount of $1,147,651.19, which includes payment of $86,127.40 in costs incurred by the Ohio Environmental Protection Agency that had been reimbursed by EPA. Based upon the estimate of certain Settling

Defendants, Settling Non-Performing Defendants that participated in the RI/FS under the 2002 AOC paid approximately $961,372 for the RI/FS.

I.       Certain of the Settling Defendants and/or other PRPs at the Site completed a Remedial Investigation ("RI") Report for the Lammers Barrel Factory Property in the fall of 2008, and completed a Feasibility Study ("FS") Report for the Lammers Barrel Factory Property in June 2011.

J.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of the proposed plan for remedial action on July 6, 2011, in a major local newspaper of general circulation. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action. A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Superfund Division Director, EPA Region 5, based the selection of the response action.

K.     On September 27, 2011, EPA selected the remedy for Operable Unit 1 ("OU1") at the Lammers Barrel Factory Property portion of the Site, issuing a final Record of Decision ("ROD") on that date. The State concurred with the selected remedy. The ROD includes a responsiveness summary to the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA, 42 U.S.C. § 9617(b). The OU1 remedial action is described in Paragraph 14.a. below. Because a ROD has been issued only for OU1, EPA may choose to select further response activities for the Site. Further anticipated response activities at the Site are referred to in this Consent Decree as Operable Unit 2 or ("OU2"). Pursuant to the 2002 AOC, certain of the Settling Defendants and/or other PRPs at the Site are currently conducting an RI/FS at the Site.

3

L.      Based on the information presently available to EPA, EPA believes that the Work will be properly and promptly conducted by Settling Performing Defendants if conducted in accordance with the requirements of this Consent Decree and its appendices.

M.      Solely for the purposes of Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), the remedy set forth in the ROD and the Work to be performed by Settling Performing Defendants shall constitute a response action taken or ordered by the President for which judicial review shall be limited to the administrative record.

N.      EPA has determined the following:

1.      Prompt settlement with each Settling Non-Performing Defendant and each Settling Federal Agency is practicable and in the public interest within the meaning of Section 122(g)(1) of CERCLA, 42 U.S.C. § 9622(g)(1);

2.      the payment to be made by each Settling Non-Performing Defendant and each Settling Federal Agency under this Consent Decree involves only a minor portion of the response costs at the Site within the meaning of Section 122(g)(1) of CERCLA, 42 U.S.C. § 9622(g)(1), based upon certain of the Settling Defendants' estimate that the total response costs incurred and to be incurred at or in connection with the Site by the EPA Hazardous Substance Superfund and by other persons is $13,061,523. The parties recognize that the actual costs may be more or less than this estimate. The payment is also based upon premiums set by the parties as further discussed in Paragraph 6.c below; and

3.      the amount of hazardous substances contributed to the Site by each Settling Non-Performing Defendant and each Settling Federal Agency, and the toxic or other hazardous effects of the hazardous substances contributed to the Site by each Settling Non-Performing Defendant and each Settling Federal Agency, are minimal in comparison to other hazardous substances at the Site within the meaning of Section 122(g)(1)(A) of CERCLA, 42 U.S.C. § 9622(g)(1)(A). This is because the amount of materials containing hazardous substances contributed to the Site by each Settling Non-Performing Defendant and each Settling Federal Agency does not exceed 1.25% of the materials containing hazardous substances at the Site as accepted by EPA based on the allocation approach submitted by certain of the Settling Defendants, and the hazardous substances contributed by each Settling Non-Performing Defendant and each Settling Federal Agency to the Site are not significantly more toxic or of significantly greater hazardous effect than other hazardous substances at the Site.

O.      The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this

4

Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. **JURISDICTION**

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b).  This Court also has personal jurisdiction over Settling Defendants.  Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District.  Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. **PARTIES BOUND**

2.      This Consent Decree applies to and is binding upon the United States and upon Settling Defendants, their heirs, successors, and assigns.  Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3.      Settling Performing Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Work required by this Consent Decree and to each person representing any Settling Performing Defendant with respect to the Site or the Work, and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree.  Settling Performing Defendants or their contractors shall

provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Settling Performing Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work in accordance with the terms of this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with Settling Performing Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. **DEFINITIONS**

4. Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or its appendices, the following definitions shall apply solely for purposes of this Consent Decree:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675.

"Consent Decree" shall mean this Consent Decree and all appendices attached hereto (listed in Section XXVIII). In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

"Day" or "day" shall mean a calendar day unless expressly stated to be a working day. The term "working day" shall mean a day other than a Saturday, Sunday, or federal or state holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or state holiday, the period shall run until the close of business of the next working day.

"DOJ" shall mean the United States Department of Justice and its successor departments, agencies, or instrumentalities.

"Effective Date" shall mean the date upon which this Consent Decree is entered by the Court as recorded on the Court docket, or, if the Court instead issues an order approving the Consent Decree, the date such order is recorded on the Court docket.

"EPA" shall mean the United States Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

"EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing plans, reports, and other deliverables submitted pursuant to this Consent Decree, in overseeing implementation of the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Paragraph 9 (Notice to Successors-in-Title and Transfers of Real Property), Sections VII (Remedy Review), IX (Access and Institutional Controls) (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure, implement, monitor, maintain, or enforce Institutional Controls including, but not limited to, the amount of just compensation), XV (Emergency Response), Paragraph 43 (Funding for Work Takeover), and Section XXIX (Community Involvement). Future Response Costs shall also include all Interim Response Costs.

"Institutional Controls" or "ICs" shall mean Proprietary Controls and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that: (a)

limit land, water, and/or resource use to minimize the potential for human exposure to Waste Material at or in connection with the Site; (b) limit land, water, and/or resource use to implement, ensure non-interference with, or ensure the protectiveness of the Remedial Action; and/or (c) provide information intended to modify or guide human behavior at or in connection with the Site.

"Institutional Control Implementation and Assurance Plan" or "ICIAP" shall mean the plan for implementing, maintaining, monitoring, and reporting on the Institutional Controls set forth in the ROD, prepared in accordance with the Statement of Work ("SOW").

"Interim Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, (a) paid by the United States in connection with the Site between August 26, 2012 and the Effective Date, or (b) incurred prior to the Effective Date but paid after that date.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).  The applicable rate of interest shall be the rate in effect at the time the interest accrues.  The rate of interest is subject to change on October 1 of each year.

"Lammers Barrel Site Special Account" shall mean the special account, within the EPA Hazardous Substance Superfund, established for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

"Lammers Barrel Site OU2 Special Account" shall mean the special account, within the EPA Hazardous Substance Superfund, to be created for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3), for receipt of payments made for OU2 RD/RA costs pursuant to Paragraph 50.b. of this Consent Decree.

8

"Lammers Barrel Factory Property" shall mean the property encompassing approximately 2.5 acres, located at the northeast intersection of Grange Hall and East Patterson roads in Beavercreek, Greene County, Ohio, and depicted generally on the maps attached as Appendix C, which constitutes Operable Unit 1 ("OU1") at the Site. (The ROD for OU1 at the Site addresses contamination at the Lammers Barrel Factory Property, including but not limited to, soil and groundwater contamination at that property.)

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Operation and Maintenance" or "O&M" shall mean all activities required to maintain the effectiveness of the Remedial Action as required under the Operation and Maintenance Plan approved or developed by EPA pursuant to Section VI (Performance of the Work by Settling Defendants) and the SOW, and maintenance, monitoring, and enforcement of Institutional Controls as provided in the ICIAP.

"Owner Settling Defendant" shall mean Helen Gorby.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Parties" shall mean the United States and Settling Defendants.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site through August 25, 2012, plus Interest on all such costs that has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action, set forth in the ROD and the SOW and any modified standards established pursuant to this Consent Decree.

"Plaintiff" shall mean the United States.

"Proprietary Controls" shall mean easements or covenants running with the land that (a) limit land, water, or resource use and/or provide access rights and (b) are created pursuant to common law or statutory law by an instrument that is recorded by or on behalf of the owner in the appropriate land records office.

"RCRA" shall mean the Solid Waste Disposal Act, 42 U.S.C. §§ 6901-6992 (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to OU1 at the Site signed on September 27, 2011, by the Director of the Superfund Division, EPA Region 5, and all attachments thereto. The ROD is attached as Appendix A.

"Remedial Action" shall mean all activities Settling Performing Defendants are required to perform at OU1 under the Consent Decree to implement the ROD, in accordance with the SOW, the final approved remedial design submission, the approved Remedial Action Work Plan, and other plans approved by EPA, including implementation of Institutional Controls, until the Performance Standards are met, and excluding performance of the Remedial Design, O&M, and the activities required under Section XXV (Retention of Records).

"Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 12 (Remedial Action) and approved by EPA, and any modifications thereto.

"Remedial Design" shall mean those activities to be undertaken by Settling Performing Defendants to develop the final plans and specifications for the Remedial Action pursuant to the Remedial Design Work Plan.

"Remedial Design Work Plan" shall mean the document developed pursuant to Paragraph 11 (Remedial Design) and approved by EPA, and any modifications thereto.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean Settling Performing Defendants, Owner Settling Defendant, and Settling Non-Performing Defendants.

"Settling Federal Agencies" shall mean the United States Army and the United States Air Force and their successor departments, agencies, or instrumentalities.

"Settling Performing Defendants" shall mean those Parties identified in Appendix F.

"Settling Non-Performing Defendants" shall mean those Parties identified in Appendix G.

"Site" shall mean the Lammers Barrel Superfund Site, encompassing approximately 2.5 acres, located at the northeast intersection of Grange Hall and East Patterson roads in Beavercreek, Greene County, Ohio, and depicted generally on the maps attached as Appendix C, along with the areal extent of groundwater contamination migrating off that property.

"State" shall mean the State of Ohio.

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Remedial Design, Remedial Action, and O&M at OU1 of the Site, as set forth in Appendix B to this Consent Decree, and any modifications made in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by Settling Performing Defendants to supervise and direct the implementation of the Work under this Consent Decree.

"Transfer" shall mean to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any "hazardous waste" under Ohio Admin. Code §§ 3745-50-10(A)(48) and 3745-51-03 (2004).

"Work" shall mean all activities and obligations Settling Performing Defendants are required to perform under this Consent Decree, except the activities required under Section XXV (Retention of Records).

## V. GENERAL PROVISIONS

5.    <u>Objectives of the Parties.</u> The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment by the design and implementation of response actions at the Site by Settling Performing Defendants, to pay response costs of the Plaintiff by Settling Defendants, and to resolve the claims of Plaintiff against Settling Defendants as proposed in the Consent Decree. Further, this Consent Decree is

intended to reach a final settlement with the Settling Non-Performing Defendants and Settling Federal Agencies pursuant to Section 122(g) of CERCLA.

6.    <u>Commitments by Settling Defendants</u>

a.    Settling Performing Defendants shall finance, with the assistance of the cash payments from the Settling Non-Performing Defendants pursuant to Paragraph 50.a, and shall perform the Work in accordance with this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth in this Consent Decree or developed by Settling Performing Defendants and approved by EPA pursuant to this Consent Decree. Settling Performing Defendants, with the assistance of the cash payments from Settling Non-Performing Defendants, shall reimburse the United States for Past Response Costs and Future Response Costs as provided in this Consent Decree. Settling Performing Defendants' obligations to the United States under this Consent Decree shall not be affected by the failure of any Settling Non-Performing Defendant to meet a payment term required by the Consent Decree. Settling Performing Defendants shall not be obligated to meet any Settling Non-Performing Defendant's payment term under this Consent Decree that has not been paid to the Settling Performing Defendants pursuant to Paragraph 50.b.

b.    The obligations of Settling Performing Defendants to finance and perform the Work, including obligations to pay amounts due under this Consent Decree, are joint and several. In the event of the insolvency of any Settling Performing Defendant or the failure by any Settling Performing Defendant to implement any requirement of this Consent Decree, the remaining Settling Performing Defendants shall complete all such requirements.

c.    Each Settling Non-Performing Defendant's payment made pursuant to Paragraphs 50.a. and b. of this Consent Decree includes an amount for: (a) past response costs

13

incurred at or in connection with the Site by the United States or other person; (b) projected future response costs and additional costs that may be incurred in the future in accordance with a future operable unit anticipated for the Site; and (c) a premium to cover the risks and uncertainties associated with this settlement, including but not limited to, the risk that total response costs incurred or to be incurred at or in connection with the Site by the EPA Hazardous Substance Superfund, or by any other person, will exceed the estimated total response costs upon which Settling Non-Performing Defendants' payments are based.

7.      <u>Compliance With Applicable Law.</u>    All activities undertaken by Settling Performing Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations.  Settling Performing Defendants must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the ROD and the SOW.  The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be deemed to be consistent with the NCP.

8.      <u>Permits</u>.

a.      As provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e), and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work).  Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Performing Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

14

b. Settling Performing Defendants may seek relief under the provisions of Section XVIII (Force Majeure) for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit or approval referenced in Paragraph 8.a and required for the Work, provided that they have submitted timely and complete applications and taken all other actions necessary to obtain all such permits or approvals.

c. This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

9. Notice to Successors-in-Title and Transfers of Real Property.

a. Owner Settling Defendant shall, at least 60 days prior to any Transfer of any real property located at the Lammers Barrel Factory Property, give written notice: (1) to the transferee regarding the Consent Decree and any Institutional Controls regarding the real property; and (2) to EPA and the State regarding the proposed Transfer, including the name and address of the transferee and the date on which the transferee was notified of the Consent Decree and any Institutional Controls.

b. Owner Settling Defendant may Transfer any real property located at the Site only if: (1) any Proprietary Controls required by Paragraph 22.c have been recorded with respect to the real property; or (2) Owner Settling Defendant has obtained an agreement from the transferee, enforceable by Settling Defendants and the United States, to (i) allow access and restrict land/water use, pursuant to Paragraphs 23.a(1) and 23.a(2), (ii) record any Proprietary Controls on the real property, pursuant to Paragraph 23.a(3), and (iii) subordinate its rights to any such Proprietary Controls, pursuant to Paragraph 23.a(3), and EPA has approved the agreement in writing. If, after a Transfer of the real property, the transferee fails to comply with the agreement provided for in this Paragraph 9.b, Owner Settling Defendant shall take all reasonable

15

steps to obtain the transferee's compliance with such agreement. The United States may seek the transferee's compliance with the agreement and/or assist Owner Settling Defendant in obtaining compliance with the agreement after providing reasonable notice under the circumstances and an opportunity to the Settling Performing Defendants to perform such activities if time allows. Settling Performing Defendants shall reimburse the United States under Section XVI (Payments for Response Costs), for all costs incurred, direct or indirect, by the United States regarding obtaining compliance with such agreement, including, but not limited to, the cost of attorney time.

c. In the event of any Transfer of real property located at the Site, unless the United States otherwise consents in writing, Settling Performing Defendants shall continue to comply with their obligations under the Consent Decree, including, but not limited to, their obligation to provide and/or secure access, to implement, maintain, monitor, and report on Institutional Controls, and to abide by such Institutional Controls.

## VI. PERFORMANCE OF THE WORK BY SETTLING PERFORMING DEFENDANTS

10.      Selection of Supervising Contractor.

a. All aspects of the Work to be performed by Settling Performing Defendants pursuant to Sections VI (Performance of the Work by Settling Performing Defendants), VII (Remedy Review), VIII (Quality Assurance, Sampling, and Data Analysis), IX (Access and Institutional Controls), and XV (Emergency Response) shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to disapproval by EPA. Within ten days after the lodging of this Consent Decree, Settling Performing Defendants shall notify EPA in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor. With respect to any contractor proposed

16

to be Supervising Contractor, Settling Performing Defendants shall demonstrate that the proposed contractor has a quality assurance system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan ("QMP").  The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-011002, March 2001, reissued May 2006) or equivalent documentation as determined by EPA.  EPA will issue a notice of disapproval or an authorization to proceed regarding hiring of the proposed contractor.  If at any time thereafter, Settling Performing Defendants propose to change a Supervising Contractor, Settling Performing Defendants shall give such notice to EPA and must obtain an authorization to proceed from EPA before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

b.      If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Performing Defendants in writing.  Settling Performing Defendants shall submit to EPA a list of contractors, including the qualifications of each contractor that would be acceptable to them within 30 days after receipt of EPA's disapproval of the contractor previously proposed. EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors.  Settling Performing Defendants may select any contractor from that list that is not disapproved and shall notify EPA of the name of the contractor selected within 21 days after EPA's authorization to proceed.

c.      If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents Settling Performing Defendants from meeting one or more deadlines in a plan approved by EPA pursuant to this

17

Consent Decree, Settling Performing Defendants may seek relief under Section XVIII (Force Majeure).

11.  Remedial Design.

    a.  Within 60 days after EPA's issuance of an authorization to proceed pursuant to Paragraph 10 (Selection of Supervising Contractor), Settling Performing Defendants shall submit to EPA and the State a work plan for the design of the Remedial Action at the Site ("Remedial Design Work Plan").  The Remedial Design Work Plan shall provide for design of the remedy set forth in the ROD, in accordance with the SOW, and for achievement of the Performance Standards and other requirements set forth in the ROD, this Consent Decree, and/or the SOW.  The Remedial Design Work Plan shall include the overall management strategy for performing the design and pre-design activities associated with the Remedial Actions for U.S. EPA review and approval.  The Remedial Design Work Plan shall document the responsibility and authority of all organizations and key personnel involved with the implementation and shall include a description of qualifications of key personnel directing the Remedial Design, including contractor personnel.  Upon its approval by EPA, the Remedial Design Work Plan shall be incorporated into and enforceable under this Consent Decree.

    b.  The Remedial Design Work Plan shall include plans and schedules for implementation of all remedial design and pre-design tasks identified in the SOW, including, but not limited to, plans and schedules for the completion of:  (1) a Pre-Design Investigation Work Plan developed in accordance with the SOW to fully delineate the extent of contamination in soil at the Lammers Barrel Factory Property and to develop appropriate additive dosing rates to achieve successful contaminant destruction; (2) a Health and Safety Plan for field design activities that conforms to the applicable Occupational Safety and Health Administration and

18

EPA requirements including, but not limited to, 29 C.F.R. § 1910.120; (3) a preliminary design submission; (4) an intermediate design submission; and (5) a pre-final/final design submission. In addition, the Remedial Design Work Plan shall include a schedule for completion of the Remedial Action Work Plan. Settling Performing Defendants may incorporate the previously approved Site Health and Safety Plan by reference into the Remedial Design Work Plan.

        c.      Upon approval of the Remedial Design Work Plan by EPA, after a reasonable opportunity for review and comment by the State, Settling Performing Defendants shall implement the Remedial Design Work Plan. Settling Performing Defendants shall submit to EPA and the State all plans, reports, and other deliverables required under the approved Remedial Design Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables). Unless otherwise directed by EPA, Settling Performing Defendants shall not commence further Remedial Design activities at the Site prior to approval of the Remedial Design Work Plan.

        d.      The Pre-Design Investigation Work Plan shall include, at a minimum, all of those items identified in Task 2.A. of the SOW, including, at a minimum, the following: (1) a Field Sampling Plan for the Pre-Design Investigation; (2) a Pre-Design Quality Assurance Project Plan developed in accordance with Section VIII (Quality Assurance, Sampling, and Data Analysis); (3) A soil additive Dosing Test Plan to determine appropriate additive dosing rates; and (4) a schedule for delivery of a draft Pre-Design Investigation Report for EPA review and approval. Upon approval of the Pre-Design Investigation Work Plan by EPA, after a reasonable opportunity for review and comment by the State, Settling Performing Defendants shall implement the Pre-Design Investigation Work Plan.

e.      The preliminary design submission shall include all of those items identified in Task 2.B. of the SOW, including, at a minimum, the following:  (1) design criteria; (2) results of treatability studies and/or results of additional field sampling conducted during pre-design Work; (3) a project delivery strategy; (4) preliminary plans, drawings, and sketches; (5) required specifications in outline form; (6) a preliminary construction schedule; (7) proposed locations for all remedial action construction activity; (8) long-term operation and maintenance requirements for the remedial action; (9) real estate, easement and permit requirements; and (10) a draft Institutional Control Implementation and Assurance Plan (ICIAP).

f.      The intermediate design submission shall be a continuation and expansion of the preliminary design.  The intermediate design shall include all of those items identified in Task 2.C. of the SOW, including, at a minimum, the following:  (1) a draft Performance Standard Verification Plan; (2) a draft Construction Quality Assurance Plan (CQAP); (3) a draft Field Sampling Plan for Remedial Action; (4) a draft Quality Assurance Project Plan (QAPP) Addendum developed in accordance with Section VIII (Quality Assurance, Sampling, and Data Analysis); (5) a draft Health and Safety Plan for Remedial Action; and (6) a draft Contingency Plan.  The Settling Performing Defendants may incorporate any of these plans that have been approved previously for the Site by reference into the Remedial Design.

g.      The pre-final/final design submission shall include all of those items identified in Task 2.D. of the SOW, including, at a minimum, the following: (1) final plans, drawings and specifications; (2) a Final Performance Standard Verification Plan; (3) a Final QAPP Addendum; (4) a Final Construction Quality Assurance Plan (CQAP); (5) a Final Health and Safety Plan for Remedial Action; (6) a Final Contingency Plan; (7) a draft Operation and Maintenance Plan for the Remedial Action; and (8) a Pre-Final Project Schedule for the

20

construction and implementation of the remedial action. The CQAP, which shall detail the approach to quality assurance during construction activities at the Site, shall specify a quality assurance official, independent of the Supervising Contractor, to conduct a quality assurance program during the construction phase of the project.

   12. <u>Remedial Action</u>.

     a. Within 45 days after the approval of the final design submission, Settling Performing Defendants shall submit to EPA and the State a work plan for the performance of the Remedial Action at the Site ("Remedial Action Work Plan"). The Remedial Action Work Plan shall provide for construction and implementation of the remedy set forth in the ROD and achievement of the Performance Standards, in accordance with this Consent Decree, the ROD, the SOW, and the design plans and specifications developed in accordance with the Remedial Design Work Plan and approved by EPA. Upon its approval by EPA, the Remedial Action Work Plan shall be incorporated into and enforceable under this Consent Decree. At the same time as they submit the Remedial Action Work Plan, Settling Performing Defendants shall submit to EPA and the State a Health and Safety Plan for field activities required by the Remedial Action Work Plan that conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

     b. The Remedial Action Work Plan shall include the following: (1) an overall schedule for completion of the Remedial Action; (2) a method for selection of the contractor; (3) a schedule for developing and submitting other required Remedial Action plans; (4) a groundwater monitoring plan for assessing performance of the Remedial Action; (5) methods for satisfying permitting requirements; (6) a final Operation and Maintenance Plan; (7) a methodology for implementing the Contingency Plan, if necessary; (8) a CQAP; (9) procedures

and plans for the decontamination of equipment and the disposal of contaminated materials; (10) a schedule for completion of the Soil Mixing Completion Report; and (11) a schedule for completion of the Completion of Work Report. The Remedial Action Work Plan also shall include the methodology for implementing the CQAP and a schedule for implementing all Remedial Action tasks identified in the final design submission and shall identify the initial formulation of Settling Performing Defendants' Remedial Action project team (including, but not limited to, the Supervising Contractor). Within 30 days of the Settling Performing Defendant's award of the contract to perform the Remedial Action, Settling Performing Defendants shall submit a final project schedule for the construction and implementation of the remedial action that includes specific dates for completion of the project and major milestones.

        c.      Upon approval of the Remedial Action Work Plan by EPA, after a reasonable opportunity for review and comment by the State, Settling Performing Defendants shall implement the activities required under the Remedial Action Work Plan. Settling Performing Defendants shall submit to EPA and the State all reports and other deliverables required under the approved Remedial Action Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables). Unless otherwise directed by EPA, Settling Performing Defendants shall not commence physical Remedial Action activities at the Site prior to approval of the Remedial Action Work Plan.

        13.     Settling Performing Defendants shall continue to implement the Remedial Action until the Performance Standards are achieved. Settling Performing Defendants shall implement O&M for so long thereafter as is required by this Consent Decree.

14.     <u>Modification of SOW or Related Work Plans</u>.

a.      If EPA determines that it is necessary to modify the work specified in the SOW and/or in work plans developed pursuant to the SOW to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, and such modification is consistent with the scope of the remedy set forth in the ROD, then EPA may issue such modification in writing and shall notify Settling Performing Defendants of such modification.  For the purposes of this Paragraph and Paragraph 45 (Completion of the Work) only, the "scope of the remedy set forth in the ROD" is:  In situ biological treatment of impacted soils using soil mixing to treat principal threat wastes; in situ groundwater treatment using enhanced reductive dechlorination to address contaminated water; institutional controls in accordance with the Ohio Uniform Environmental Covenant Act to prohibit residential use of the Lammers Barrel Factory Property and prohibit the installation of wells on the Lammers Barrel Factory Property other than those installed as part of the remedial action; and O&M.  If Settling Performing Defendants object to the modification they may, within 45 days after EPA's notification, seek dispute resolution under Paragraph 64 (Record Review).

b.      The SOW and/or related work plans shall be modified:  (1) in accordance with the modification issued by EPA; or (2) if Settling Performing Defendants invoke dispute resolution, in accordance with the final resolution of the dispute.  The modification shall be incorporated into and enforceable under this Consent Decree, and Settling Performing Defendants shall implement all work required by such modification.  Settling Performing Defendants shall incorporate the modification into the Remedial Design or Remedial Action

Work Plan under Paragraph 11 (Remedial Design) or Paragraph 12 (Remedial Action), as appropriate.

        c.      Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

      15.      Nothing in this Consent Decree, the SOW, or the Remedial Design or Remedial Action Work Plans constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

      16.      <u>Off-Site Shipment of Waste Material</u>.

        a.      Settling Performing Defendants may ship Waste Material from the Site to an off-Site facility only if they verify, prior to any shipment, that the off-Site facility is operating in compliance with the requirements of Section 121(d)(3) of CERCLA, 42 U.S.C. § 9621(d)(3), and 40 C.F.R. § 300.440, by obtaining a determination from EPA that the proposed receiving facility is operating in compliance with 42 U.S.C. § 9621(d)(3) and 40 C.F.R. § 300.440.

        b.      Settling Performing Defendants may ship Waste Material from the Site to an out-of-state waste management facility only if, prior to any shipment, they provide written notice to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator. This notice requirement shall not apply to any off-Site shipments when the total quantity of all such shipments will not exceed ten cubic yards. The written notice shall include the following information, if available: (1) the name and location of the receiving facility; (2) the type and quantity of Waste Material to be shipped; (3) the schedule for the shipment; and (4) the method of transportation. Settling Performing Defendants also shall notify the state environmental official referenced above and the EPA Project Coordinator of any major

changes in the shipment plan, such as a decision to ship the Waste Material to a different out-of-state facility. Settling Performing Defendants shall provide the written notice after the award of the contract for Remedial Action construction and before the Waste Material is shipped.

## VII. **REMEDY REVIEW**

17.     <u>Periodic Review</u>. Settling Performing Defendants shall conduct any studies and investigations that EPA requests in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA, 42 U.S.C. § 9621(c), and any applicable regulations.

## VIII. **QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS**

18.     <u>Quality Assurance</u>.

a.     Settling Performing Defendants shall use quality assurance, quality control, and chain of custody procedures for all [treatability, design, compliance, and monitoring] samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/13-01/003, March 2001, reissued May 2006), "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/240/R-02/009, December 2002), and subsequent amendments to such guidelines upon notification by EPA to Settling Performing Defendants of such amendment. Amended guidelines shall apply only to procedures conducted after such notification.

b.     Prior to the commencement of any monitoring project under this Consent Decree, Settling Performing Defendants shall submit to EPA for approval, after a reasonable opportunity for review and comment by the State, an Addendum to the existing Quality Assurance Project Plan ("QAPP") approved by EPA on May 8, 2003 that is consistent with the SOW, the NCP, and applicable guidance documents. If relevant to the proceeding, the Parties

agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Consent Decree.  Settling Performing Defendants shall ensure that EPA and State personnel and their authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Performing Defendants in implementing this Consent Decree.  In addition, Settling Performing Defendants shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP for quality assurance monitoring.  Settling Performing Defendants shall ensure that the laboratories they utilize for the analysis of samples taken pursuant to this Consent Decree perform all analyses according to accepted EPA methods. Accepted EPA methods consist of those methods that are documented in the "USEPA Contract Laboratory Program Statement of Work for Inorganic Analysis, ILM05.4," and the "USEPA Contract Laboratory Program Statement of Work for Organic Analysis, SOM01.2," and any amendments made thereto during the course of the implementation of this Consent Decree; however, upon approval by EPA, after opportunity for review and comment by the State, Settling Performing Defendants may use other analytical methods that are as stringent as or more stringent than the CLP-approved methods.  Settling Performing Defendants shall ensure that all laboratories they use for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent quality assurance/quality control ("QA/QC") program.   Settling Performing Defendants shall use only laboratories that have a documented Quality System that complies with ANS1/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001, reissued May 2006) or equivalent documentation as

26

determined by EPA. EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program ("NELAP") as meeting the Quality System requirements. Settling Performing Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Consent Decree are conducted in accordance with the procedures set forth in the QAPP approved by EPA.

19.     Upon request, Settling Performing Defendants shall allow split or duplicate samples to be taken by EPA or its authorized representatives. Settling Performing Defendants shall notify EPA and the State not less than 15 days in advance of any sample collection activity unless shorter notice is agreed to by EPA. In addition, EPA shall have the right to take any additional samples that EPA deems necessary. Upon request, EPA shall allow Settling Performing Defendants to take split or duplicate samples of any samples it takes as part of Plaintiffs oversight of Settling Performing Defendants' implementation of the Work.

20.     Settling Performing Defendants shall submit one paper copy and an electronic copy each to EPA and the State of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Performing Defendants with respect to the Site and/or the implementation of this Consent Decree unless EPA agrees otherwise.

21.     Notwithstanding any provision of this Consent Decree, the United States shall retain all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

## IX. ACCESS AND INSTITUTIONAL CONTROLS

22.     If the Site, or any other real property where access or land/water use restrictions are needed, is owned or controlled by any of Settling Defendants, such persons shall:

27

a.      commencing on the date of lodging of the Consent Decree, provide the United States, the State, and the other Settling Defendants, and their representatives, contractors, and subcontractors, with access at all reasonable times to the Site, or such other real property, to conduct any activity regarding the Consent Decree including, but not limited to, the following activities:

(1)      Monitoring the Work;

(2)      Verifying any data or information submitted to the United States or the State;

(3)      Conducting investigations regarding contamination at or near the Site;

(4)      Obtaining samples;

(5)      Assessing the need for, planning, or implementing additional response actions at or near the Site;

(6)      Assessing implementation of quality assurance and quality control practices as defined in the approved CQAP;

(7)      Implementing the Work pursuant to the conditions set forth in Paragraph 81 (Work Takeover);

(8)      Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Performing Defendants or their agents, consistent with Section XXIV (Access to Information);

(9)      Assessing Settling Performing Defendants' compliance with the Consent Decree;

28

(10)     Determining whether the Site or other real property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted under the Consent Decree; and

(11)     Implementing, monitoring, maintaining, reporting on, and enforcing any Institutional Controls and the requirements of the ICIAP.

b.       commencing on the date of lodging of the Consent Decree, not use the Site, or such other real property, in any manner that EPA determines will pose an unacceptable risk to human health or to the environment due to exposure to Waste Material or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action or O&M.  The restrictions shall include, but not be limited to: institutional controls in accordance with the Ohio Uniform Environmental Covenant Act to prohibit residential use of the Lammers Barrel Site property and to prohibit the installation of wells on the Lammers Barrel Factory Property other than those installed as part of the remedial action; and

c.       Such Settling Defendants shall:

(1)     Execute and record in the appropriate land records office Proprietary Controls that: (i) grant a right of access to conduct any activity regarding the Consent Decree including, but not limited to, those activities listed in Paragraph 22.a; and (ii) grant the right to enforce the land/water use restrictions set forth in Paragraph 22.b, including, but not limited to, the specific restrictions listed therein and any land/water use restrictions listed in the ICIAP, as further specified in this Paragraph 22.c.  The Proprietary Controls shall be granted to one or more of the following persons, as determined by EPA: (i) the United States, on behalf of EPA, and its representatives; (ii) the State and its representatives; (iii) the other Settling Defendants and their

29

representatives; and/or (iv) other appropriate grantees. The Proprietary Controls shall meet the requirements of the Ohio Uniform Environmental Covenant Act and allow EPA to maintain the right to enforce the Proprietary Controls without acquiring an interest in real property. If any Proprietary Controls are granted to any Settling Performing Defendants pursuant to this Paragraph 22.c(1), then such Settling Performing Defendants shall monitor, maintain, report on, and enforce such Proprietary Controls.

(2) In accordance with the schedule set forth in the ICIAP, submit to EPA for review and approval regarding such real property: (i) draft Proprietary Controls, in substantially the form attached hereto as Appendix D, that are enforceable under state law; and (ii) a current title insurance commitment or other evidence of title acceptable to EPA, that shows title to the land affected by the Proprietary Controls to be free and clear of all prior liens and encumbrances (except when EPA waives the release or subordination of such prior liens or encumbrances or when, despite best efforts, Settling Defendants are unable to obtain release or subordination of such prior liens or encumbrances).

(3) Within 15 days after EPA's approval and acceptance of the Proprietary Controls and the title evidence, update the title search and, if it is determined that nothing has occurred since the effective date of the commitment, or other title evidence, to affect the title adversely, record the Proprietary Controls with the appropriate land records office. Within 30 days after recording the Proprietary Controls, such Settling Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded Proprietary Controls showing the clerk's recording stamps. If the Proprietary Controls are to be conveyed to the United States, the Proprietary Controls and title evidence

30

(including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title shall be obtained as revised by 40 U.S.C. § 3111.

23.     If the Site, or any other real property where access and/or land/water use restrictions are needed, is owned or controlled by persons other than any Settling Defendant:

a.      Settling Performing Defendants shall use best efforts to secure from such persons:

(1)      an agreement to provide access thereto for the United States, the State, and Settling Performing Defendants, and their representatives, contractors, and subcontractors, to conduct any activity regarding the Consent Decree including, but not limited to, the activities listed in Paragraph 22.a;

(2)      an agreement, enforceable by Settling Performing Defendants and the United States, to refrain from using the Site, or such other real property, in any manner that EPA determines will pose an unacceptable risk to human health or to the environment due to exposure to Waste Material or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action or O&M to be performed pursuant to this Consent Decree.  The agreement shall include, but not be limited to, the land/water use restrictions listed in Paragraph 22.b; and

(3)      the execution and recordation in the appropriate land records office of Proprietary Controls, that (i) grant a right of access to conduct any activity regarding the Consent Decree including, but not limited to, those activities listed in Paragraph 22.a, and (ii) grant the right to enforce the land/water use restrictions set forth in Paragraph 22.b, including, but not limited to, the specific restrictions listed therein and any

land/water use restrictions listed in the ICIAP. The Proprietary Controls shall be granted to one or more of the following persons, as determined by EPA: (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) Settling Performing Defendants and their representatives, and/or (iv) other appropriate grantees. The Proprietary Controls shall meet the requirements of the Ohio Uniform Environmental Covenant Act and allow EPA to maintain the right to enforce the Proprietary Controls without acquiring an interest in real property. If any Proprietary Controls are granted to any Settling Performing Defendants pursuant to this Paragraph 23.a(3), then such Settling Performing Defendants shall monitor, maintain, report on, and enforce such Proprietary Controls.

b. In accordance with the schedule set forth in the ICIAP, Settling Performing Defendants shall submit to EPA for review and approval regarding such property: (i) draft Proprietary Controls, in substantially the form attached hereto as Appendix D, that are enforceable under state law; and (ii) a current title insurance commitment, or other evidence of title acceptable to EPA, that shows title to the land affected by the Proprietary Controls to be free and clear of all prior liens and encumbrances (except when EPA waives the release or subordination of such prior liens or encumbrances or when, despite best efforts, Settling Performing Defendants are unable to obtain release or subordination of such prior liens or encumbrances).

c. Within 15 days of EPA's approval and acceptance of the Proprietary Controls and the title evidence, Settling Performing Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment, or other title evidence, to affect the title adversely, record the Proprietary Controls with the appropriate

32

land records office.  Within 30 days after the recording of the Proprietary Controls, Settling Performing Defendants shall provide EPA with a final title insurance policy, or other formal evidence of title acceptable to EPA, and a certified copy of the original recorded Proprietary Controls showing the clerk's recording stamps.  If the Proprietary Controls are to be conveyed to the United States, the Proprietary Controls and title evidence (including formal title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title shall be obtained as required by 40 U.S.C. § 3111.

24.    For purposes of Paragraphs 22.c(2), 23.a and 23.b, "best efforts" includes the payment of reasonable sums of money to obtain access, an agreement to restrict land/water use, Proprietary Controls, and/or an agreement to release or subordinate a prior lien or encumbrance. If, within 30 days after EPA's approval of the ICIAP, Settling Performing Defendants have not: (a) obtained agreements to provide access, restrict land/water use, or record Proprietary Controls, as required by Paragraph 23.a(1), 23.a(2), or 23.a(3); or (b) obtained, pursuant to Paragraph 22.c(2) or 23.b, agreements from the holders of prior liens or encumbrances to release or subordinate such liens or encumbrances to the Proprietary Controls, Settling Performing Defendants shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that Settling Performing Defendants have taken to attempt to comply with Paragraph 22 or 23.  The United States may, as it deems appropriate, assist Settling Performing Defendants in obtaining access, agreements to restrict land/water use, Proprietary Controls, or the release or subordination of a prior lien or encumbrance.  Settling Performing Defendants shall reimburse the United States under Section XVI (Payments for Response Costs) for all costs incurred, direct or indirect, by the United States in obtaining such access, agreements to restrict land/water use, Proprietary Controls, and/or the release/subordination of prior liens or

encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

25.     If EPA determines that Institutional Controls in the form of state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls are needed at or in connection with the Site, Settling Performing Defendants shall cooperate with EPA's and the State's efforts to secure and ensure compliance with such governmental controls.

26.     Notwithstanding any provision of the Consent Decree, the United States and the State retain all of their access authorities and rights, as well as all of their rights to require Institutional Controls, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

## X. **REPORTING REQUIREMENTS**

27.     In addition to any other requirement of this Consent Decree, Settling Performing Defendants shall submit to EPA and the State an electronic copy of written monthly progress reports that: (a) describe the actions that have been taken toward achieving compliance with this Consent Decree during the previous month; (b) include a summary of all results of sampling and tests and all other data received or generated by Settling Performing Defendants or their contractors or agents in the previous month; (c) identify all plans, reports, and other deliverables required by this Consent Decree completed and submitted during the previous month; (d) describe all actions, including, but not limited to, data collection and implementation of work plans, that are scheduled for the next six weeks and provide other information relating to the progress of construction, including, but not limited to, critical path diagrams, Gantt charts and Pert charts; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work,

and a description of efforts made to mitigate those delays or anticipated delays; (f) include any modifications to the work plans or other schedules that Settling Performing Defendants have proposed to EPA or that have been approved by EPA; and (g) describe all activities undertaken in support of the Community Involvement Plan during the previous month and those to be undertaken in the next six weeks. Settling Performing Defendants shall submit these progress reports to EPA and the State by the tenth day of every month following the lodging of this Consent Decree until EPA notifies Settling Performing Defendants pursuant to Paragraph 45.b of Section XIV (Certification of Completion). If requested by EPA or the State, Settling Performing Defendants shall also provide briefings for EPA and the State to discuss the progress of the Work. If no significant action is occurring, the frequency of the reports may be revised by EPA, or upon approval by EPA, the reports may not be required.

28.     Settling Performing Defendants shall notify EPA of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the performance of the activity.

29.     Upon the occurrence of any event during performance of the Work that Settling Performing Defendants are required to report pursuant to Section 103 of CERCLA, 42 U.S.C. § 9603, or Section 304 of the Emergency Planning and Community Right-to-know Act ("EPCRA"), 42 U.S.C. § 11004, Settling Performing Defendants shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator nor Alternate EPA Project Coordinator is available, the Emergency Response Section, Region 5, United States Environmental Protection Agency.

35

These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

30.     Within 20 days after the onset of such an event, Settling Performing Defendants shall furnish to EPA and the State a written report, signed by Settling Performing Defendants' Project Coordinator, setting forth the events that occurred and the measures taken, and to be taken, in response thereto.  Within 30 days after the conclusion of such an event, Settling Performing Defendants shall submit a report setting forth all actions taken in response thereto.

31.     Settling Performing Defendants shall submit two paper copies of all plans, reports, data, and other deliverables required by the SOW, the Remedial Design Work Plan, the Remedial Action Work Plan, or any other approved plans to EPA in accordance with the schedules set forth in such plans.  Settling Performing Defendants shall simultaneously submit one paper copy of all such plans, reports, data, and other deliverables to the State.  Settling Performing Defendants shall submit in electronic form all or any portion of any deliverables Settling Performing Defendants are required to submit pursuant to the provisions of this Consent Decree.

32.     All deliverables submitted by Settling Performing Defendants to EPA that purport to document Settling Performing Defendants' compliance with the terms of this Consent Decree shall be signed by an authorized representative of Settling Performing Defendants.

XI. **EPA APPROVAL OF PLANS, REPORTS, AND OTHER DELIVERABLES**

33.     <u>Initial Submissions</u>.

a.      After review of any plan, report, or other deliverable that is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the State, shall:  (1) approve, in whole or in part, the submission; (2)

36

approve the submission upon specified conditions; (3) disapprove, in whole or in part, the submission; or (4) any combination of the foregoing.

      b.    EPA also may modify the initial submission to cure deficiencies in the submission if:  (1) EPA determines that disapproving the submission and awaiting a resubmission would cause substantial disruption to the Work; or (2) previous submission(s) have been disapproved due to material defects and the deficiencies in the initial submission under consideration indicate a bad faith lack of effort to submit an acceptable plan, report, or deliverable.

      34.    <u>Resubmissions.</u> Upon receipt of a notice of disapproval under Paragraph 33.a(3) or (4), or if required by a notice of approval upon specified conditions under Paragraph 33.a(2), Settling Performing Defendants shall, within 30 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other deliverable for approval.  After review of the resubmitted plan, report, or other deliverable, EPA may: (a) approve, in whole or in part, the resubmission; (b) approve the resubmission upon specified conditions; (c) modify the resubmission; (d) disapprove, in whole or in part, the resubmission, requiring Settling Performing Defendants to correct the deficiencies; or (e) any combination of the foregoing.

      35.    <u>Material Defects.</u> If an initially submitted or resubmitted plan, report, or other deliverable contains a material defect, and the plan, report, or other deliverable is disapproved or modified by EPA under Paragraph 33.b(2) or 34 due to such material defect, then the material defect shall constitute a lack of compliance for purposes of Paragraph 67.  The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the accrual

and payment of any stipulated penalties regarding Settling Performing Defendants' submissions under this Section.

36.     Implementation. Upon approval, approval upon conditions, or modification by EPA under Paragraph 33 (Initial Submissions) or Paragraph 34 (Resubmissions), of any plan, report, or other deliverable, or any portion thereof: (a) such plan, report, or other deliverable, or portion thereof, shall be incorporated into and enforceable under this Consent Decree; and (b) Settling Performing Defendants shall take any action required by such plan, report, or other deliverable, or portion thereof, subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA. The implementation of any non-deficient portion of a plan, report, or other deliverable submitted or resubmitted under Paragraph 33 or 34 shall not relieve Settling Performing Defendants of any liability for stipulated penalties under Section XX (Stipulated Penalties).

## XII. **PROJECT COORDINATORS**

37.     Within 30 days after lodging this Consent Decree, Settling Performing Defendants, the State and EPA will notify each other, in writing, of the name, address, telephone number, and email address of their respective designated Project Coordinators and Alternate Project Coordinators. If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least five working days before the change occurs, unless impracticable, but in no event later than the actual day the change is made. Settling Performing Defendants' Project Coordinator shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. Settling Performing Defendants' Project Coordinator shall not be an

attorney for any Settling Performing Defendant in this matter. He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

38. Plaintiff may designate other representatives, including, but not limited to, EPA and State employees, and federal and State contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager ("RPM") and an On-Scene Coordinator ("OSC") by the NCP, 40 C.F.R. Part 300. EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the NCP, to halt any Work required by this Consent Decree and to take any necessary response action when he or she determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

39. EPA's Project Coordinator and Settling Performing Defendants' Project Coordinator will meet as appropriate.

XIII. **PERFORMANCE GUARANTEE**

40. In order to ensure the full and final completion of the Work, Settling Performing Defendants shall establish and maintain a performance guarantee, initially in the amount of $3.4 million for the benefit of EPA (hereinafter "Estimated Cost of the Work"). The performance guarantee, which must be satisfactory in form and substance to EPA, shall be in the form of one or more of the following mechanisms (provided that, if Settling Performing Defendants intend to use multiple mechanisms, such multiple mechanisms shall be limited to surety bonds guaranteeing payment, letters of credit, trust funds, and insurance policies):

a.     A surety bond unconditionally guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b.     One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (1) that has the authority to issue letters of credit and (2) whose letter-of-credit operations are regulated and examined by a federal or state agency;

c.     A trust fund established for the benefit of EPA that is administered by a trustee (1) that has the authority to act as a trustee and (2) whose trust operations are regulated and examined by a federal or state agency;

d.     A policy of insurance that (1) provides EPA with acceptable rights as a beneficiary thereof; and (2) is issued by an insurance carrier (i) that has the authority to issue insurance policies in the applicable jurisdiction(s) and (ii) whose insurance operations are regulated and examined by a federal or state agency;

e.     A demonstration by one or more Settling Performing Defendants that each such Settling Performing Defendant meets the financial test criteria of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work (plus the amount(s) of any other federal or any state environmental obligations financially assured through the use of a financial test or guarantee), provided that all other requirements of 40 C.F.R. § 264.143(f) are met to EPA's satisfaction; or

f.     A written guarantee to fund or perform the Work executed in favor of EPA by one or more of the following: (1) a direct or indirect parent company of a Settling Performing Defendant, or (2) a company that has a "substantial business relationship" (as

40

defined in 40 C.F.R. § 264.141(h)) with at least one Settling Performing Defendant; provided, however, that any company providing such a guarantee must demonstrate to the satisfaction of EPA that it satisfies the financial test and reporting requirements for owners and operators set forth in subparagraphs (1) through (8) of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work (plus the amount(s) of any other federal or any state environmental obligations financially assured through the use of a financial test or guarantee) that it proposes to guarantee hereunder.

41.     Settling Performing Defendants have selected, and EPA has found satisfactory, as an initial performance guarantee a Surety Bond, Trust Fund, and a Letter of Credit pursuant to Paragraph 40, in the forms attached hereto as Appendix E.  Within 30 days after the Effective Date, Settling Performing Defendants shall execute or otherwise finalize all instruments or other documents required in order to make the selected performance guarantee(s) legally binding in a form substantially identical to the documents attached hereto as Appendix E, and such performance guarantee(s) shall thereupon be fully effective.  Within 45 days after the Effective Date, Settling Performing Defendants shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding to Dale Meyer, Regional Comptroller, Mail Code MF-IOJ, Resource Management Division, U.S. EPA Region 5, 77 West Jackson Blvd., Chicago, Illinois 60604 in accordance with Section XXVI (Notices and Submissions), with a copy to Cynthia Mack-Smeltzer, Accountant, Program Accounting and Analysis Section, Mail Code MF-10J, Resource Management Division, U.S. EPA Region 5, 77 West Jackson Blvd., Chicago, Illinois 60604, and to the United States and EPA and the State as specified in Section XXVI.

If, at any time after the Effective Date and before issuance of the Certification of Completion of the Work pursuant to Paragraph 45, Settling Performing Defendants provide a performance guarantee for completion of the Work by means of a demonstration or guarantee pursuant to Paragraph 40.e or 40.f, the relevant Settling Performing Defendants shall also comply with the other relevant requirements of 40 C.F.R. § 264.143(f) relating to these mechanisms unless otherwise provided in this Consent Decree, including but not limited to: (a) the initial submission of required financial reports and statements from the relevant entity's chief financial officer ("CFO") and independent certified public accountant ("CPA"), in the form prescribed by EPA in its financial test sample CFO letters and CPA reports available at: http://www.epa.gov/compliance/resources/policies/cleanup/superfund/fa-test-samples.pdf; (b) the annual resubmission of such reports and statements within 90 days after the close of each such entity's fiscal year; and (c) the prompt notification of EPA after each such entity determines that it no longer satisfies the financial test requirements set forth at 40 C.F.R. § 264.143(f)(1) and in any event within 90 days after the close of any fiscal year in which such entity no longer satisfies such financial test requirements.   For purposes of the performance guarantee mechanisms specified in this Section XIII, references in 40 C.F.R. Part 264, Subpart H, to "closure," "post-closure," and "plugging and abandonment" shall be deemed to include the Work; the terms "current closure cost estimate," "current post-closure cost estimate," and "current plugging and abandonment cost estimate" shall be deemed to include the Estimated Cost of the Work; the terms "owner" and "operator" shall be deemed to refer to each Settling Performing Defendant making a demonstration under Paragraph 40.e; and the terms "facility" and "hazardous waste facility" shall be deemed to include the Lammers Barrel Factory Property.

42.     In the event that EPA determines at any time that a performance guarantee provided by any Settling Performing Defendant pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, or in the event that any Settling Performing Defendant becomes aware of information indicating that a performance guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, Settling Performing Defendants, within 30 days after receipt of notice of EPA's determination or, as the case may be, within 30 days after any Settling Performing Defendant becoming aware of such information, shall obtain and present to EPA for approval a proposal for a revised or alternative form of performance guarantee listed in Paragraph 40 that satisfies all requirements set forth in this Section XIII; provided, however, that if any Settling Performing Defendant cannot obtain such revised or alternative form of performance guarantee within such 30-day period, and provided further that the Settling Performing Defendant shall have commenced to obtain such revised or alternative form of performance guarantee within such 30-day period, and thereafter diligently proceeds to obtain the same, EPA shall extend such period for such time as is reasonably necessary for the Settling Performing Defendant in the exercise of due diligence to obtain such revised or alternative form of performance guarantee, such additional period not to exceed 30 days.  In seeking approval for a revised or alternative form of performance guarantee, Settling Performing Defendants shall follow the procedures set forth in Paragraph 44.b(2).  Settling Performing Defendants' inability to post a performance guarantee for completion of the Work shall in no way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of

Settling Performing Defendants to complete the Work in strict accordance with the terms of this Consent Decree

43.     Funding for Work Takeover. The commencement of any Work Takeover pursuant to Paragraph 81 shall trigger EPA's right to receive the benefit of any performance guarantee(s) provided pursuant to Paragraphs 40.a, 40.b, 40.c, 40.d, or 40.f, and at such time EPA shall have immediate access to resources guaranteed under any such performance guarantee(s), whether in cash or in kind, as needed to continue and complete the Work assumed by EPA under the Work Takeover.  Upon the commencement of any Work Takeover, if (a) for any reason EPA is unable to promptly secure the resources guaranteed under any such performance guarantee(s), whether in cash or in kind, necessary to continue and complete the Work assumed by EPA under the Work Takeover, or (b) in the event that the performance guarantee involves a demonstration of satisfaction of the financial test criteria pursuant to Paragraph 40.e or Paragraph 40.f(2), Settling Performing Defendants (or in the case of Paragraph 40.f(2), the guarantor) shall immediately upon written demand from EPA deposit into the Lammers Barrel Site Special Account or such other account as EPA may specify, in immediately available funds and without setoff, counterclaim, or condition of any kind, a cash amount up to but not exceeding the estimated cost of completing the Work as of such date, as determined by EPA.  In addition, if at any time EPA is notified by the issuer of a performance guarantee that such issuer intends to cancel the performance guarantee mechanism it has issued, then, unless Settling Performing Defendants provide a substitute performance guarantee mechanism in accordance with this Section XIII no later than 30 days prior to the impending cancellation date, EPA shall be entitled (as of and after the date that is 30 days prior to the impending cancellation) to draw fully on the funds guaranteed under the then-existing performance guarantee.  All EPA Work Takeover costs not

44

reimbursed under this Paragraph shall be reimbursed under Section XVI (Payments for Response Costs).

44.     Modification of Amount and/or Form of Performance Guarantee.

a.     Reduction of Amount of Performance Guarantee. If Settling Performing Defendants believe that the estimated cost of completing the Work has diminished below the amount set forth in Paragraph 40, Settling Performing Defendants may, on any anniversary of the Effective Date, or at any other time agreed to by the Parties, petition EPA in writing to request a reduction in the amount of the performance guarantee provided pursuant to this Section so that the amount of the performance guarantee is equal to the estimated cost of completing the Work. Settling Performing Defendants shall submit a written proposal for such reduction to EPA that shall specify, at a minimum, the estimated cost of completing the Work and the basis upon which such cost was calculated.  In seeking approval for a reduction in the amount of the performance guarantee, Settling Performing Defendants shall follow the procedures set forth in Paragraph 44.b(2) for requesting a revised or alternative form of performance guarantee, except as specifically provided in this Paragraph 44.a.  If EPA decides to accept Settling Performing Defendants' proposal for a reduction in the amount of the performance guarantee, either to the amount set forth in Settling Performing Defendants' written proposal or to some other amount as selected by EPA, EPA will notify the petitioning Settling Performing Defendants of such decision in writing.  Upon EPA's acceptance of a reduction in the amount of the performance guarantee, the Estimated Cost of the Work shall be deemed to be the estimated cost of completing the Work set forth in EPA's written decision.  After receiving EPA's written decision, Settling Performing Defendants may reduce the amount of the performance guarantee in accordance with and to the extent permitted by such written acceptance and shall submit

copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding in accordance with Paragraph 44.b(2). In the event of a dispute, Settling Performing Defendants may reduce the amount of the performance guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XIX (Dispute Resolution). No change to the form or terms of any performance guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraphs 42 or 44.b.

        b.   <u>Change of Form of Performance Guarantee</u>.

        (1)   If, after the Effective Date, Settling Performing Defendants desire to change the form or terms of any performance guarantee(s) provided pursuant to this Section, Settling Performing Defendants may, on any anniversary of the Effective Date, or at any other time agreed to by the Parties, petition EPA in writing to request a change in the form or terms of the performance guarantee provided hereunder. The submission of such proposed revised or alternative performance guarantee shall be as provided in Paragraph 44.b(2). Any decision made by EPA on a petition submitted under this Paragraph shall be made in EPA's sole and unreviewable discretion, and such decision shall not be subject to challenge by Settling Performing Defendants pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

        (2)   Settling Performing Defendants shall submit a written proposal for a revised or alternative performance guarantee to EPA that shall specify, at a minimum, the estimated cost of completing the Work, the basis upon which such cost was calculated, and the proposed revised performance guarantee, including all proposed

46

instruments or other documents required in order to make the proposed performance guarantee legally binding. The proposed revised or alternative performance guarantee must satisfy all requirements set forth or incorporated by reference in this Section. Settling Performing Defendants shall submit such proposed revised or alternative performance guarantee to Dale Meyer, Regional Comptroller, Mail Code MF-10J, Resource Management Division, U.S. EPA Region 5, 77 West Jackson Blvd., Chicago, Illinois 60604 in accordance with Section XXVI (Notices and Submissions), with a copy to Cynthia Mack-Smeltzer, Accountant, Program Accounting and Analysis Section, Mail Code MF-10J, Resource Management Division, U.S. EPA Region 5, 77 West Jackson Blvd., Chicago, Illinois 60604. EPA will notify Settling Performing Defendants in writing of its decision to accept or reject a revised or alternative performance guarantee submitted pursuant to this Paragraph. Within ten days after receiving a written decision approving the proposed revised or alternative performance guarantee, Settling Performing Defendants shall execute and/or otherwise finalize all instruments or other documents required in order to make the selected performance guarantee(s) legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such performance guarantee(s) shall thereupon be fully effective. Settling Performing Defendants shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding to Dale Meyer, Regional Comptroller, Mail Code MF-10J, Resource Management Division, U.S. EPA Region 5, 77 West Jackson Blvd., Chicago, Illinois 60604 within 30 days after receiving a written decision approving the proposed revised or alternative performance guarantee in accordance with

47

Section XXVI (Notices and Submissions), with a copy to Cynthia Mack-Smeltzer, Accountant, Program Accounting and Analysis Section, Mail Code MF-10J, Resource Management Division, U.S. EPA Region 5, 77 West Jackson Blvd., Chicago, Illinois 60604 and to the United States and EPA and the State as specified in Section XXVI.

      c.    <u>Release of Performance Guarantee</u>. Settling Performing Defendants shall not release, cancel, or discontinue any performance guarantee provided pursuant to this Section except as provided in this Paragraph. If Settling Defendants receive written notice from EPA in accordance with Paragraph 45 that the Work has been fully and finally completed in accordance with the terms of this Consent Decree, or if EPA otherwise so notifies Settling Performing Defendants in writing, Settling Performing Defendants may thereafter release, cancel, or discontinue the performance guarantee(s) provided pursuant to this Section. In the event of a dispute, Settling Performing Defendants may release, cancel, or discontinue the performance guarantee(s) required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XIX (Dispute Resolution).

XIV. <strong>CERTIFICATION OF COMPLETION</strong>

      45.    <u>Completion of the Work</u>.

      a.    Within 90 days after Settling Performing Defendants conclude that all phases of the Work, other than any remaining activities required under Section VII (Remedy Review), have been fully performed, Settling Performing Defendants shall schedule and conduct a pre-final inspection as set forth at Section VI of the SOW to be attended by Settling Performing Defendants and EPA. Notice of such inspection shall also be provided to the State at least 14 days before the pre-final inspection is to take place. If, after the inspection, Settling Performing Defendants still believe that the Work has been fully performed, Settling Performing Defendants

48

shall submit a written report by a registered professional engineer as set forth at Section VI of the SOW stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree.   The report shall contain the following statement, signed by a responsible corporate official of a Settling Performing Defendant or Settling Performing Defendants' Project Coordinator:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after review of the written report, EPA, after reasonable opportunity for review and comment by the State, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Performing Defendants in writing of the activities that must be undertaken by Settling Performing Defendants pursuant to this Consent Decree to complete the Work, provided, however, that EPA may only require Settling Performing Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy set forth in the ROD," as that term is defined in Paragraph 14.a. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require Settling Performing Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables).  Settling Performing Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution),

conduct a final inspection and submit the final Completion of Work Report for approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables) as set forth in Section VI of the SOW.

b.     If EPA concludes, based on the initial or any subsequent request for Certification of Completion of the Work by Settling Performing Defendants and after a reasonable opportunity for review and comment by the State, that the Work has been performed in accordance with this Consent Decree, EPA will so notify Settling Performing Defendants in writing.

## XV. EMERGENCY RESPONSE

46.     If any action or occurrence during the performance of the Work causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Performing Defendants shall, subject to Paragraph 47, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator.  If neither of these persons is available, Settling Defendants shall notify the EPA Emergency Response Branch, Region 5.  Settling Performing Defendants shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW.  In the event that Settling Performing Defendants fail to take appropriate response action as required by this Section, and EPA takes such action instead, Settling Performing Defendants shall reimburse EPA all costs of the response action under Section XVI (Payments for Response Costs).

47.     Subject to Section XXI (Covenants by Plaintiff), nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States (a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or (b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site.

## XVI. **PAYMENTS FOR RESPONSE COSTS**

48.     <u>Reimbursement by Settling Performing Defendants for Past Response Costs</u>.

a.      Within 60 days after the Effective Date, Settling Performing Defendants shall pay to EPA $1,496,689.04 in payment for Past Response Costs.  Payment shall be made in accordance with Paragraph 51.a (Instructions for Past Response Cost Payments).

b.      The total amount to be paid by Setting Performing Defendants pursuant to Paragraph 48.a shall be deposited by EPA in the Lammers Barrel Site Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

49.     <u>Reimbursement by Settling Performing Defendants for Future Response Costs</u>. Settling Performing Defendants shall pay to EPA all Future Response Costs not inconsistent with the NCP.

a.      On a periodic basis, EPA will send Settling Performing Defendants a bill requiring payment that includes an Itemized Cost Summary, which includes direct and indirect costs incurred by EPA, EPA's contractors, and DOJ.  Settling Performing Defendants shall make all payments within 45 days after Settling Defendants' receipt of each bill requiring payment,

except as otherwise provided in Paragraph 52, in accordance with Paragraph 51.b (Instructions for Future Response Cost Payments).

b.     The total amount to be paid by Setting Performing Defendants pursuant to Paragraph 49.a shall be deposited by EPA in the Lammers Barrel Site Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

c.     After EPA issues the Certification of Completion of the Work pursuant to Paragraph 45 and a final accounting of Future Response Costs, EPA will apply any unused amount paid by Settling Performing Defendants pursuant to Paragraph 49 to any other unreimbursed response costs or response actions remaining at the Site. Any decision by EPA to apply unused amounts to unreimbursed response costs or response actions remaining at the Site shall not be subject to challenge by Settling Performing Defendants pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

50.     Payment by Settling Non-Performing Defendants

a.     Payments for OU1 and for OU2 RI/FS.  As negotiated between Settling Performing Defendants and Settling Non-Performing Defendants, each Settling Non-Performing Defendant shall pay to Settling Performing Defendants, no later than forty-five (45) days after Settling Performing Defendants have notified Settling Non-Performing Defendants that this Consent Decree has been entered by the Court, all monies necessary to satisfy the claims of the Settling Performing Defendants against the Settling Non-Performing Defendants for OU1 arising pursuant to this Consent Decree.  The amounts to be paid by Settling Non-Performing Defendants for OU1 and for OU2 RI/FS are set forth in Appendix G.  The monies paid by the Settling Non-Performing Defendants under this Paragraph 50.a. (except for the payment of any

stipulated penalties required under this Consent Decree, all of which shall be paid directly to the United States as set forth in Section XX) shall be deposited into a trust account and used exclusively to pay for the Work, and for the RI/FS at the Site.  These monies from the Settling Non-Performing Defendants cannot be used to pay penalties incurred by the Settling Performing Defendants.  The amount to be paid and the instructions for payment have been the subject of an invoice submitted to each Settling Non-Performing Defendant by the Settling Performing Defendants.  At the time of payment of the invoiced amount to the Settling Performing Defendants in accordance with the invoice instructions for payment, each Settling Non-Performing Defendant shall send notice that payment has been made to the United States and to EPA in accordance with Section XXVI (Notices and Submissions).  In the event a Settling Non-Performing Defendant fails to make timely payment under this Paragraph, such Settling Non-Performing Defendant shall pay Interest on the unpaid balance to Settling Performing Defendants.  Interest shall begin to accrue on the date payment was due.  Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiff or Settling Performing Defendants by virtue of Settling Non-Performing Defendants' failure to make timely payment under this Consent Decree.

   b.  <u>Payments for OU2 RD/RA.</u>

    (1)  Within 45 days of the Effective Date, each Settling Non-Performing Defendant shall pay to Settling Performing Defendants the amount for estimated OU2 RD/RA costs set forth in Appendix G.  Each Settling Non-Performing Defendant's payment under this Paragraph includes an amount for: (a) projected total future response costs anticipated to be incurred by the United States or by any other person at or in connection with OU2 other than the projected RI/FS costs for OU2; (b) a

premium to cover the risks and uncertainties associated with this settlement, including but not limited to, the risk that total response costs incurred or to be incurred at or in connection with the Site by the United States or by any other person, will exceed the estimated total response costs upon which Settling Defendants' payments are based; and (c) the deduction of a 25 percent "orphan share" of $528,624 applied to the Settling Defendants' OU2 RD/RA remedy cost estimate of $2,114,496.

(2)     The Settling Performing Defendants shall deposit the monies paid by the Settling Non-Performing Defendants pursuant to Paragraph 50.b(1) into a trust account for payment to EPA. The amount to be paid under Paragraph 50.b(1) has been the subject of an invoice submitted to each Settling Non-Performing Defendant by the Settling Performing Defendants. At the time of payment of the invoiced amount to the Settling Performing Defendants, each Settling Non-Performing Defendant shall send notice that payment has been made, indicating the amount, to the United States in accordance with Section XXVI (Notices and Submissions).

(3)     Within 60 days of the Effective Date, Settling Performing Defendants shall pay the monies received from Settling Non-Performing Defendants under Paragraph 50.b(1) to EPA. If they receive late payments from Settling Non-Performing Defendants under Paragraph 50.b(1), Settling Performing Defendants shall pay the late payments plus Interest from Settling Non-Performing Defendants under Paragraph 50.b.(1) within 30 days of the Settling Performing Defendants' receipt of the payments. Payment to EPA under Paragraph 50.b(3) shall be made in accordance with Paragraph 51.b. When making payments under Paragraph 50.b(3), Settling Performing Defendants shall also comply with Paragraph 51.c and reference OU2 RD/RA.

(4)     The total amount EPA receives pursuant to Paragraph 50.b. shall be deposited by EPA in the Lammers Barrel Site OU2 Special Account to be created by EPA and retained and used to conduct or finance response actions at or in connection with OU2 at the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

(5)     If full payment to EPA has not been made for any Settling Non-Performing Defendant within 60 days of the Effective Date, that Settling Non-Performing Defendant shall pay Interest on the unpaid balance.  In addition, if full payment to EPA has not been made for any Settling Non-Performing Defendant as required by Paragraph 50.b, the United States may, in addition to any other available remedies or sanctions, bring an action against that Settling Non-Performing Defendant seeking injunctive relief to compel payment and/or seeking civil penalties under Section 122(l) of CERCLA, 42 U.S.C. § 9622(l), for failure to make timely payment.

51.     Payment Instructions for Settling Performing Defendants.

a.     Instructions for Past Response Costs Payments. All payments required elsewhere in this Consent Decree to be made in accordance with this Paragraph 51.a shall be made at https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions provided to Settling Performing Defendants by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Southern District of Ohio after the Effective Date.  The payment instructions provided by the Financial Litigation Unit shall include a Consolidated Debt Collection System ("CDCS") number, which shall be used to identify all payments required to be made in accordance with this Consent Decree.  The FLU shall provide the payment instructions to:

Susan M. Franzetti
Nijman Franzetti, LLP
10 S. LaSalle St., Suite 3600
Chicago, IL 60603
(312) 251-5590

on behalf of Settling Performing Defendants.  Settling Performing Defendants may change the

individual to receive payment instructions on their behalf by providing written notice of such

change in accordance with Section XXVI (Notices and Submissions).  When making payments

under this Paragraph 51.a, Settling Performing Defendants shall also comply with Paragraph

51.c.

b.      <u>Instructions for Future Response Costs Payments and Stipulated Penalties.</u>

All payments required, elsewhere in this Consent Decree, to be made in accordance with this

Paragraph 51.b shall be made by Fedwire EFT to:

Federal Reserve Bank of New York
ABA = 021030004
Account = 68010727
SWIFT address = FRNYUS33
33 Liberty Street
New York NY 10045
Field Tag 4200 of the Fedwire message should read "D 68010727
Environmental Protection Agency"

When making payments under this Paragraph 51.b, Settling Performing Defendants shall

also comply with Paragraph 51.c.

c.      <u>Instructions for All Payments.</u> All payments made under Paragraphs 50.b.

(Payment by Settling Non-Performing Defendants for OU2 RD/RA), 51.a (Instructions for Past

Response Cost Payments) or 51.b. (Instructions for Future Response Cost Payments) shall

reference the CDCS Number, Site/Spill ID Number 05BX, and DOJ Case Number 90-11-3-

07706.  At the time of any payment required to be made in accordance with Paragraphs 50.b,

51.a. or 51.b, Settling Performing Defendants shall send notice that payment has been made to

56

the United States, and to EPA, in accordance with Section XXVI (Notices and Submissions), and to the EPA Cincinnati Finance Office by email at acctsreceivable.cinwd@epa.gov, or by mail at 26 Martin Luther King Drive, Cincinnati, Ohio 45268.  Such notice shall also reference the CDCS Number, Site/Spill ID Number, and DOJ Case Number.

52.     Settling Performing Defendants may contest any Future Response Costs billed under Paragraph 49 (Reimbursement by Settling Performing Defendants for Future Response Costs) if they determine that EPA has made a mathematical error or included a cost item that is not within the definition of Future Response Costs, or if they believe EPA incurred excess costs as a direct result of an EPA action that was inconsistent with a specific provision or provisions of the NCP.  Such objection shall be made in writing within 30 days after receipt of the bill and must be sent to the United States pursuant to Section XXVI (Notices and Submissions).  Any such objection shall specifically identify the contested Future Response Costs and the basis for objection.  In the event of an objection, Settling Performing Defendants shall pay all uncontested Future Response Costs to the United States within 45 days after Settling Defendants' receipt of the bill requiring payment.  Simultaneously, Settling Performing Defendants shall establish, in a duly chartered bank or trust company, an interest-bearing escrow account that is insured by the Federal Deposit Insurance Corporation ("FDIC"), and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs.  Settling Performing Defendants shall send to the United States, as provided in Section XXVI (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account.

Simultaneously with establishment of the escrow account, Settling Performing Defendants shall initiate the Dispute Resolution procedures in Section XIX (Dispute Resolution).  If the United States prevails in the dispute, Settling Performing Defendants shall pay the sums due (with accrued interest) to the United States within five days after the resolution of the dispute.  If Settling Performing Defendants prevail concerning any aspect of the contested costs, Settling Performing Defendants shall pay that portion of the costs (plus associated accrued interest) for which they did not prevail to the United States within five days after the resolution of the dispute.  Settling Performing Defendants shall be disbursed any balance of the escrow account.  All payments to the United States under this Paragraph shall be made in accordance with Paragraph 51.b (Instructions for Future Response Cost Payments).  The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding Settling Performing Defendants' obligation to reimburse the United States for its Future Response Costs.

53.    Interest. In the event that any payment for Past Response Costs or for Future Response Costs required under this Section is not made by the date required, Settling Performing Defendants shall pay Interest on the unpaid balance.  The Interest to be paid on Past Response Costs under this Paragraph shall begin to accrue on the Effective Date.  The Interest on Future Response Costs shall begin to accrue on the date of the bill.  The Interest shall accrue through the date of Settling Performing Defendants' payment.  Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiff by virtue of Settling Performing Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 67.

## XVII. **INDEMNIFICATION AND INSURANCE**

54.　<u>Settling Performing Defendants' Indemnification of the United States and the State</u>.

a.　The United States does not assume any liability by entering into this Consent Decree or by virtue of any designation of Settling Performing Defendants as EPA's authorized representatives under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e).  Settling Performing Defendants shall indemnify, save and hold harmless the United States and the State and their officials, agents, employees, contractors, subcontractors, and representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Performing Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Performing Defendants as EPA's authorized representatives under Section 104(e) of CERCLA.  Further, Settling Performing Defendants agree to pay the United States and the State all costs they incur including, but not limited to, attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States or the State based on negligent or other wrongful acts or omissions of Settling Performing Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree.  Neither the United States nor the State shall be held out as a party to any contract entered into by or on behalf of Settling Performing Defendants in carrying out activities pursuant to this Consent Decree.

Neither Settling Performing Defendants nor any such contractor shall be considered an agent of the United States or the State.

b.  The United States and the State shall give Settling Performing Defendants notice of any claim for which the United States or the State plans to seek indemnification pursuant to this Paragraph 54, and shall consult with Settling Performing Defendants prior to settling such claim.

55.  Settling Performing Defendants covenant not to sue and agree not to assert any claims or causes of action against the United States and the State for damages or reimbursement or for setoff of any payments made or to be made to the United States or the State, arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Performing Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.  In addition, Settling Performing Defendants shall indemnify and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Performing Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

56.  No later than 15 days before commencing any on-site Work, Settling Performing Defendants shall secure, and shall maintain until the first anniversary after the Remedial Action has been performed in accordance with this Consent Decree and the Performance Standards have been achieved, commercial general liability insurance with limits of $3.5 million dollars, for any one occurrence, and automobile liability insurance with limits of $3.5 million dollars, combined single limit, naming the United States as an additional insured with respect to all liability arising

out of the activities performed by or on behalf of Settling Performing Defendants pursuant to this Consent Decree. In addition, for the duration of this Consent Decree, Settling Performing Defendants shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Performing Defendants in furtherance of this Consent Decree. Prior to commencement of the Work under this Consent Decree, Settling Performing Defendants shall provide to EPA certificates of such insurance and a copy of each insurance policy. Settling Performing Defendants shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date. If Settling Performing Defendants demonstrate by evidence satisfactory to EPA and the State that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Performing Defendants need provide only that portion of the insurance described above that is not maintained by the contractor or subcontractor.

## XVIII. **FORCE MAJEURE**

57. "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Settling Defendants, of any entity controlled by Settling Defendants, or of Settling Defendants' contractors that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendants' best efforts to fulfill the obligation. The requirement that Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure such that the delay and any adverse effects of the delay are

61

minimized to the greatest extent possible. "Force majeure" does not include financial inability to complete the Work or a failure to achieve the Performance Standards.

58.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree for which Settling Defendants intend or may intend to assert a claim of force majeure, Settling Defendants shall notify EPA's Project Coordinator orally or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Director of the Superfund Division, EPA Region 5, within five days of when Settling Defendants first knew that the event might cause a delay. Within 14 days thereafter, Settling Defendants shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Settling Defendants' rationale for attributing such delay to a force majeure; and a statement as to whether, in the opinion of Settling Defendants, such event may cause or contribute to an endangerment to public health or welfare, or the environment. Settling Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure. Settling Defendants shall be deemed to know of any circumstance of which Settling Defendants, any entity controlled by Settling Defendants, or Settling Defendants' contractors knew or should have known. Failure to comply with the above requirements regarding an event shall preclude Settling Defendants from asserting any claim of force majeure regarding that event, provided, however, that if EPA, despite the late notice, is able to assess to its satisfaction whether the event is a force majeure under Paragraph 57 and whether Settling Defendants have exercised their best efforts under Paragraph 57, EPA may, in its unreviewable

discretion, excuse in writing Settling Defendants' failure to submit timely notices under this Paragraph.

59.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure, the time for performance of the obligations under this Consent Decree that are affected by the force majeure will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation.  If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure, EPA will notify Settling Defendants in writing of its decision.  If EPA agrees that the delay is attributable to a force majeure, EPA will notify Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure.

60.     If Settling Defendants elect to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice.  In any such proceeding, Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendants complied with the requirements of Paragraphs 57 and 58.  If Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

XIX. **DISPUTE RESOLUTION**

61.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes regarding this Consent Decree.  However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of Settling Defendants that have not been disputed in accordance with this Section.

62.    Any dispute regarding this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute.  The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute.  The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

63.    <u>Statements of Position</u>.

a.    In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 45 days after the conclusion of the informal negotiation period, Settling Defendants invoke the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by Settling Defendants.  The Statement of Position shall specify Settling Defendants' position as to whether formal dispute resolution should proceed under Paragraph 64 (Record Review) or 65.

b.    Within 45 days after receipt of Settling Defendants' Statement of Position, EPA will serve on Settling Defendants its Statement of Position, including, but not limited to,

64

any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA.  EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 64 (Record Review) or Paragraph 65.  Within 20 days after receipt of EPA's Statement of Position, Settling Defendants may submit a Reply.

       c.     If there is disagreement between EPA and Settling Defendants as to whether dispute resolution should proceed under Paragraph 64 (Record Review) or 65, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable.  However, if Settling Defendants ultimately appeal to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 64 and 65.

       64.    <u>Record Review.</u>  Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph.  For purposes of this Paragraph, the adequacy of any response action includes, without limitation, the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree, and the adequacy of the performance of response actions taken pursuant to this Consent Decree.  Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendants regarding the validity of the ROD's provisions.

       a.     An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant

to this Section.  Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

   b. The Director of the Superfund Division, EPA Region 5, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 64.a.  This decision shall be binding upon Settling Defendants, subject only to the right to seek judicial review pursuant to Paragraphs 64.c and 64.d.

   c. Any administrative decision made by EPA pursuant to Paragraph 64.b shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by Settling Defendants with the Court and served on all Parties within ten days after receipt of EPA's decision.  The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a response to Settling Defendants' motion.

   d. In proceedings on any dispute governed by this Paragraph, Settling Defendants shall have the burden of demonstrating that the decision of the Superfund Division Director is arbitrary and capricious or otherwise not in accordance with law.  Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 64.a.

  65. Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law shall be governed by this Paragraph.

   a. Following receipt of Settling Defendants' Statement of Position submitted pursuant to Paragraph 63, the Director of the Superfund Division, EPA Region 5, will issue a final decision resolving the dispute.  The Superfund Division Director's decision shall be

binding unless, within ten days after receipt of the decision, Settling Defendants, as applicable, file with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to Settling Defendants' motion.

b. Notwithstanding Paragraph M (CERCLA Section 113(j) Record Review of ROD and Work) of Section I (Background), judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

66. The invocation of formal dispute resolution procedures under this Section shall not extend, postpone, or affect in any way any obligation of Settling Defendants under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 75. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that Settling Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

## XX. **STIPULATED PENALTIES**

67. Settling Performing Defendants shall be liable for stipulated penalties in the amounts set forth in Paragraphs 68 and 69 to the United States for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure). Settling Non-Performing Defendants shall be liable for stipulated penalties in the

amounts set forth in Paragraphs 68.a. to the United States for failure to comply with the requirements of Paragraph 50 of the Consent Decree. "Compliance" by Settling Performing Defendants shall include completion of all payments and activities required under this Consent Decree, or any plan, report, or other deliverable approved under this Consent Decree, in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans, reports, or other deliverables approved under this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

68.     <u>Work</u> (Including Payments and Performance Guarantee and Excluding Plans, Reports, and Other Deliverables).

a.     The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Paragraph 68.b.:

<u>Penalty Per Violation Per Day Period of Noncompliance</u>

| Penalty | Period of Noncompliance |
|---------|-------------------------|
| $2,000  | Up to 30 days           |
| $4,000  | 31st through 60th day   |
| $5,000  | 61st day and beyond     |

b.     <u>Compliance Milestones.</u>

(1)     Award RA contract(s);

(2)     Pre-construction inspection and meeting;

(3)     Initiate construction of RA;

(4)     Completion of Soil Remedy Component in accordance with schedule set forth in the approved RA Work Plan;

(5)     Completion of construction of monitoring and injection wells in accordance with the schedule set forth in the approved RA Work Plan;

(6)     Conduct groundwater sampling in accordance with the schedule set forth in the approved RA Work Plan;

(7)     Conduct final inspection, for the Soil Remedy Component and for the Work, in accordance with the schedule set forth in the SOW;

(8)     Payment For Past Response Costs and Future Response Costs pursuant to Section XVI (Payment for Response Costs);

(9)     Provision of Performance Guarantee pursuant to Section XIII (Performance Guarantee); and

(10)     Perform activities to complete the Work in accordance with EPA's notice issued pursuant to Paragraph 45 (not including those matters identified in Paragraph 69 below).

69.     <u>Stipulated Penalty Amounts — Plans, Reports, and other Deliverables</u>. The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate reports or other plans or deliverables pursuant to the Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $1,000 | Up to 30 days |
| $3,000 | 31st through 60th day |
| $5,000 | 61st day and beyond |

70.     In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 81 (Work Takeover), Settling Performing Defendants shall be liable for a stipulated penalty in the amount of $750,000.  Stipulated penalties under this Paragraph are in addition to the remedies available under Paragraphs 43 (Funding for Work Takeover) and 81 (Work Takeover).

69

71. All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. However, stipulated penalties shall not accrue: (a) with respect to a deficient submission under Section XI (EPA Approval of Plans, Reports, and Other Deliverables), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Performing Defendants of any deficiency; (b) with respect to a decision by the Director of the Superfund Division, EPA Region 5, under Paragraph 64.b or 65.a of Section XIX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Performing Defendants' reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (c) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

72. Following EPA's determination that Settling Defendants have failed to comply with a requirement of this Consent Decree, EPA may give Settling Defendants written notification of the same and describe the noncompliance. EPA may send Settling Defendants a written demand for the payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified Settling Defendants of a violation.

73.     All penalties accruing under this Section shall be due and payable to the United States within 30 days after Settling Defendants' receipt from EPA of a demand for payment of the penalties, unless Settling Defendants invoke the Dispute Resolution procedures under Section XIX (Dispute Resolution) within the 30-day period.  All payments to the United States under this Section shall indicate that the payment is for stipulated penalties and shall be made in accordance with Paragraph 51.b (Instructions for Future Response Cost Payments).

74.     Penalties shall continue to accrue as provided in Paragraph 71 during any dispute resolution period, but need not be paid until the following:

a.     If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owed shall be paid to EPA within 30 days after the agreement or the receipt of EPA's decision or order;

b.     If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Defendants shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days after receipt of the Court's decision or order, except as provided in Paragraph 74.c;

c.     If the District Court's decision is appealed by any Party, Settling Defendants shall pay all accrued penalties determined by the District Court to be owed to the United States into an interest-bearing escrow account, established at a duly chartered bank or trust company that is insured by the FDIC, within 60 days after receipt of the Court's decision or order.  Penalties shall be paid into this account as they continue to accrue, at least every 60 days. Within 15 days after receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Settling Defendants to the extent that they prevail.

75.     If Settling Defendants fail to pay stipulated penalties when due, Settling Defendants shall pay Interest on the unpaid stipulated penalties as follows: (a) if Settling Defendants have timely invoked dispute resolution such that the obligation to pay stipulated penalties has been stayed pending the outcome of dispute resolution, Interest shall accrue from the date stipulated penalties are due pursuant to Paragraph 74 until the date of payment; and (b) if Settling Defendants fail to timely invoke dispute resolution, Interest shall accrue from the date of demand under Paragraph 73 until the date of payment.  If Settling Defendants fail to pay stipulated penalties and Interest when due, the United States may institute proceedings to collect the penalties and Interest.

76.     The payment of penalties and Interest, if any, shall not alter in any way Settling Performing Defendants' obligation to complete the performance of the Work required under this Consent Decree.

77.     Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Settling Defendants' violation of this Consent Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, 42 U.S.C. § 9622, provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided in this Consent Decree, except in the case of a willful violation of this Consent Decree.

78.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XXI.  COVENANTS BY PLAINTIFF

79.     Covenants for Settling Defendants by United States.

a.      In consideration of the actions that will be performed and the payments that will be made by Settling Performing Defendants and the Owner Settling Defendant under this Consent Decree, and except as specifically provided in Paragraph 80 (General Reservations of Rights) of this Section, the United States covenants not to sue or to take administrative action against Settling Performing Defendants and the Owner Settling Defendant pursuant to Sections 106 and 107(a) of CERCLA for the Work, Past Response Costs, and Future Response Costs. These covenants shall take effect upon the receipt by EPA of the payments required by Paragraph 48.a (Payments for Past Response Costs) and any Interest or stipulated penalties due thereon under Paragraph 53 (Interest) or Section XX (Stipulated Penalties).  These covenants are conditioned upon the satisfactory performance by Settling Performing Defendants and the Owner Settling Defendant of their obligations under this Consent Decree.  These covenants not to sue extend only to the Settling Performing Defendants and the Owner Settling Defendant and their heirs, successors and assigns, but only to the extent that the liability of such heirs, successors and assigns is based on the liability of the Settling Performing Defendants or the Owner Settling Defendant and not to the extent that the liability arose independently of the liability of the Settling Performing Defendants or the Owner Settling Defendant, and do not extend to any other person.

b.      In consideration of the payments that will be made by the Settling Non-Performing Defendants under the terms of this Consent Decree, and except as specifically provided in Paragraph 80 of this Section, the United States covenants not to sue or to take administrative action against Settling Non-Performing Defendants pursuant to Sections 106 and

107(a) of CERCLA relating to the Site. These covenants not to sue shall take effect as to each Settling Non-Performing Defendant upon both the receipt by the Settling Performing Defendants of the payments required by Paragraph 50.a (Payment by Settling Non-Performing Defendants -- Payments for OU1 and OU2 RI/FS) and the receipt by the EPA of the payments required by Paragraph 50.b. (Payment by Settling Non-Performing Defendants -- Payments for OU2 RD/RA). These covenants not to sue are conditioned upon (a) the satisfactory performance by each individual Settling Non-Performing Defendant of all of its obligations under this Consent Decree and (b) the veracity of the information provided to EPA by the Settling Non-Performing Defendant relating to its involvement with the Site. These covenants not to sue extend only to the Settling Non-Performing Defendants and their successors and assigns, but only to the extent that the liability of such successors and assigns is based on the liability of the Settling Non-Performing Defendants and not to the extent that the liability arose independently of the liability of the Settling Non-Performing Defendants, and do not extend to any other person.

    c.  Except as specifically provided in Paragraph 80 (General Reservations of Rights), EPA covenants not to take administrative action against any of the Settling Federal Agencies pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607 relating to the Site. With respect to present and future liability, these covenants shall take effect for each Settling Federal Agency upon the Effective Date. With respect to each Settling Federal Agency, individually, these covenants are conditioned upon: (a) the satisfactory performance by the Settling Federal Agency of all obligations under this Consent Decree; and (b) the veracity of the information provided to EPA by the Settling Federal Agency relating to the Settling Federal Agency's involvement with the Site. These covenants extend only to Settling Federal Agencies and do not extend to any other person.

80.     <u>General Reservations of Rights</u>   The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not expressly included within Plaintiff's covenants.

a.      Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Performing Defendants and Owner Settling Defendant with respect to:

i.      liability for failure by Settling Performing Defendants or Owner Settling Defendant to meet a requirement of this Consent Decree;

ii.     liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

iii.    liability based on the ownership  of the Site by Settling Performing Defendants or Owner Settling Defendant when such ownership or operation commences after signature of this Consent Decree by Settling Performing Defendants;

iv.     liability based on the operation of the Site by Settling Performing Defendants or Owner Settling Defendant when such operation commences after signature of this Consent Decree by Settling Performing Defendants or Owner Settling Defendant and does not arise solely from Settling Performing Defendants' or Owner Settling Defendant's performance of the Work;

v.      liability based on Settling Performing Defendants' or Owner Settling Defendant's transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by Settling Performing Defendants or Owner Settling Defendant;

75

vi.     liability for damages for injury to, destruction of; or loss of natural resources, and for the costs of any natural resource damage assessments;

vii.    criminal liability;

viii.    liability for violations of federal or state law that occur during or after implementation of the Work;

ix.    liability of Settling Performing Defendants or Owner Settling Defendant, prior to achievement of Performance Standards in accordance with Paragraph 13, for additional response actions that EPA determines are necessary to achieve and maintain Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, but that cannot be required pursuant to Paragraph 14 (Modification of SOW or Related Work Plans);

x.    liability of Settling Performing Defendants and Owner Settling Defendant for additional operable units at the Site or the final response action; and

xi.    liability of Settling Performing Defendants and Owner Settling Defendant for costs that the United States will incur regarding the Site but that are not within the definition of Future Response Costs.

b.    Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Non-Performing Defendants, and EPA and the federal natural resource trustees reserve, and this Consent Decree is without prejudice to all rights against Settling Federal Agencies with respect to:

i.    liability for failure to meet a requirement of this Consent Decree;

ii.    criminal liability;

iii.     liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

iv.     liability based on the ownership or operation of the Site by the Settling Non-Performing Defendants or Settling Federal Agencies; and

v.     liability based on the Settling Non-Performing Defendants or Settling Federal Agencies' transportation, treatment, storage, or disposal, or the arrangement for transportation, treatment, storage, or disposal, of Waste Material at or in connection with the Site, after signature of this Consent Decree by Settling Non-Performing Defendants or Settling Federal Agencies.

c.     Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings against any individual Settling Non-Performing Defendant in this action or in a new action or to issue an administrative order to any individual Settling Non-Performing Defendant or individual Settling Federal Agency seeking to compel that Settling Non-Performing Defendant or any individual Settling Federal Agency to perform response actions relating to the Site, and/or to reimburse the United States for additional costs of response, if information is discovered which indicates that such Settling Non-Performing Defendant or Settling Federal Agency contributed hazardous substances to the Site in such greater amount or of such greater toxic or other hazardous effects that such Settling Non-Performing Defendant or Settling Federal Agency no longer qualifies as a de minimis party at the Site because such Settling Non-Performing Defendant or Settling Federal Agency contributed greater than 1.25% of materials containing hazardous substances at the Site or contributed hazardous substance which are significantly more toxic or are of significantly greater hazardous effect than other hazardous substances at the Site.

81.    Work Takeover.

a.    In the event EPA determines that Settling Performing Defendants have (1) ceased implementation of any portion of the Work, or (2) are seriously or repeatedly deficient or late in their performance of the Work, or (3) are implementing the Work in a manner that may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to Settling Performing Defendants.  Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Settling Performing Defendants a period of ten days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

b.    If, after expiration of the ten-day notice period specified in Paragraph 81.a, Settling Performing Defendants have not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portion(s) of the Work as EPA deems necessary ("Work Takeover").  EPA will notify Settling Performing Defendants in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Paragraph 81.b.  Funding of Work Takeover costs is addressed under Paragraph 43.

c.    Settling Performing Defendants may invoke the procedures set forth in Paragraph 64 (Record Review) to dispute EPA's implementation of a Work Takeover under Paragraph 81.b.  However, notwithstanding Settling Performing Defendants' invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under Paragraph 81.b until the earlier of (1) the date that Settling Performing Defendants remedy, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, or (2) the date that a final

decision is rendered in accordance with Paragraph 64 (Record Review) requiring EPA to terminate such Work Takeover.

82.     Notwithstanding any other provision of this Consent Decree, the United States and the State retain all authority and reserve all rights to take any and all response actions authorized by law.

## XXII. COVENANTS BY SETTLING DEFENDANTS AND SETTLING FEDERAL AGENCIES

83.     <u>Covenants by Settling Performing Defendants and Owner Settling Defendant.</u> Settling Performing Defendants and Owner Settling Defendant covenant not to sue and agree not to assert any claims or causes of action against the United States with respect to the Work, past response actions regarding the Site, Past Response Costs, and Future Response Costs, and this Consent Decree, including, but not limited to:

a.     Any direct or indirect claim for reimbursement from the EPA Hazardous Substance Superfund through CERCLA Sections 106(b)(2), 107, 111, 112 or 113, or any other provision of law; any claims under CERCLA Sections 107 or 113, RCRA Section 7002(a), 42 U.S.C. § 6972(a), or state law regarding the Work, past response actions regarding the Site, Past Response Costs, Future Response Costs, State Past Response Costs, State Future Response Costs, Settling Defendants' Past Response Costs, Settling Defendants' Future Response Costs, and this Consent Decree;

b.     any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the State of Ohio Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, or at common law; and

79

c.    any direct or indirect claim for return of unused amounts from the Lammers Barrel Site Future Response Costs Special Account, except for unused amounts that EPA determines shall be returned to Settling Defendants in accordance with Paragraph 49.c.

84.    <u>Covenants by Settling Non-Performing Defendants.</u>  Settling Non-Performing Defendants covenant not to sue and agree not to assert any claims or causes of action against the United States or its contractors or employees with respect to the Site or this Consent Decree, including, but not limited to:

a.  any direct or indirect claim for reimbursement from the EPA Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

b.  any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Constitution of the State of Ohio, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, or at common law; and

c.  any claim against the United States pursuant to Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613, relating to the Site.

85.    Except as provided in Paragraph 96 (Res Judicata and Other Defenses), the covenants in this Section shall not apply if the United States brings a cause of action or issues an order pursuant to any of the reservations in Section XXI (Covenants by Plaintiffs), other than in Paragraphs 80.a.i and 80.b.i (liability for failure to meet a requirement of the Consent Decree), 80.a.vii and 80.b.ii (criminal liability), and 80.a.viii (violations of federal/state law during or after implementation of the Work), but only to the extent that Settling Defendants' claims arise

from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

86.     Covenant by Settling Federal Agencies.  Settling Federal Agencies agree not to assert any direct or indirect claim for reimbursement from the Hazardous Substance Superfund through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law with respect to the Site and this Consent Decree.  This covenant does not preclude demand for reimbursement from the Superfund of costs incurred by a Settling Federal Agency in the performance of its duties (other than pursuant to this Consent Decree) as lead or support agency under the National Contingency Plan (40 C.F.R. Part 300).

87.     Settling Performing Defendants reserve, and this Consent Decree is without prejudice to: claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, and brought pursuant to any statute other than CERCLA or RCRA and for which the waiver of sovereign immunity is found in a statute other than CERCLA or RCRA, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States, as that term is defined in 28 U.S.C. § 2671, while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  However, the foregoing shall not include any claim based on EPA's selection of response actions, or the oversight or approval of Settling Performing Defendants' plans, reports, other deliverables or activities.

88.     Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

89.     Claims Against De Micromis Parties.  Settling Defendants and Owner Settling Defendant agree not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that they may have for all matters relating to the Site against any person where the person's liability to Settling Defendants or Owner Settling Defendant with respect to the Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Site, or having accepted for transport for disposal or treatment of hazardous substances at the Site, if all or part of the disposal, treatment, or transport occurred before April 1, 2001, and the total amount of material containing hazardous substances contributed by such person to the Site was less than 110 gallons of liquid materials or 200 pounds of solid materials.

90.     The waiver in Paragraph 89 (Claims Against De Micromis Parties) shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant or Owner Settling Defendant may have against any person meeting the criteria in Paragraph 89 if such person asserts a claim or cause of action relating to the Site against such Settling Defendant or Owner Settling Defendant.  This waiver also shall not apply to any claim or cause of action against any person meeting the criteria in Paragraph 89 if EPA determines:

a.     that such person has failed to comply with any EPA requests for information or administrative subpoenas issued pursuant to Section 104(e) or 122(e) of CERCLA, 42 U.S.C. § 9604(e) or 9622(e), or Section 3007 of RCRA, 42 U.S.C. § 6927, or has impeded or is impeding, through action or inaction, the performance of a response action or

82

natural resource restoration with respect to the Site, or has been convicted of a criminal violation for the conduct to which this waiver would apply and that conviction has not been vitiated on appeal or otherwise; or

              b.     that the materials containing hazardous substances contributed to the Site by such person have contributed significantly, or could contribute significantly, either individually or in the aggregate, to the cost of response action or natural resource restoration at the Site.

91.     <u>Claims Against De Minimis and Ability to Pay Parties</u>.  Settling Defendants and Owner Settling Defendant agree not to assert any claims or causes of action and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that they may have for response costs relating to the Site against any person that has entered or in the future enters into a final CERCLA Section 122(g) *de minimis* settlement, including the Settling Non-Performing Defendants and Settling Federal Agencies, or a final settlement based on limited ability to pay, with EPA with respect to the Site. This waiver shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant or Owner Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against such Settling Defendant or Owner Settling Defendant.

XXIII. <b>EFFECT OF SETTLEMENT; CONTRIBUTION</b>

92.     Except as provided in Paragraphs 89 (Claims Against De Micromis Parties) and 91 (Claims Against De Minimis and Ability to Pay Parties), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  Except as provided in Paragraphs 89 (Claims Against De Micromis Parties)

83

and Paragraph 91 (Claims Against *De Minimis* and Ability to Pay Parties), each of the Parties expressly reserves any and all rights (including, but not limited to, pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action that each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.  Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

93.     The Parties agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and, with respect to the Settling Non-Performing Defendants and Settling Federal Agencies, Section 122 (g)(5) of CERCLA, 42 U.S.C. § 9622(g)(5), and that each Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and, with respect to the Settling Non-Performing Defendants and Settling Federal Agencies, Section 122(g)(5) of CERCLA, 42 U.S.C. § 9622(g)(5), or as may be otherwise provided by law, for "matters addressed" in this Consent Decree.  The "matters addressed" in this Consent Decree are, with respect to the Settling Performing Defendants and Owner Settling Defendant, the Work, Past Response Costs, and Future Response Costs.  The "matters addressed" in this Consent Decree are, with respect to the Settling Non-Performing Defendants and Settling Federal Agencies, all response actions taken or to be taken and all response costs incurred or to be incurred at, or in connection with, the Site, by the United States or any other person, except for the State; provided, however, that if the United States exercises rights under the reservations in

84

Paragraph 80 (General Reservations of Rights), other than in Paragraph 80.b.i (liability for failure to meet a requirement of the Consent Decree) or 80.b.ii (criminal liability), the "matters addressed" in this Consent Decree will no longer include those response costs or response actions that are within the scope of the exercised reservation.

94.    Each Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify the United States in writing no later than 60 days prior to the initiation of such suit or claim.

95.    Each Settling Defendant shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify in writing the United States within ten days after service of the complaint on such Settling Defendant.  In addition, each Settling Defendant shall notify the United States within ten days after service or receipt of any Motion for Summary Judgment and within ten days after receipt of any order from a court setting a case for trial.

96.    <u>Res Judicata and Other Defenses.</u>  In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants by Plaintiff).

## XXIV. **ACCESS TO INFORMATION**

97.    Settling Defendants shall provide to EPA, upon request, copies of all records, reports, documents, and other information (including records, reports, documents, and other

information in electronic form) (hereinafter referred to as "Records") within their possession or control or that of their contractors or agents relating to activities at the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information regarding the Work.  Settling Defendants shall also make available to EPA for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

98.    Business Confidential and Privileged Documents.

a.    Settling Defendants may assert business confidentiality claims covering part or all of the Records submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).   Records determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies Records when they are submitted to EPA and the State, or if EPA has notified Settling Defendants that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such Records without further notice to Settling Defendants.

b.    Settling Defendants may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Settling Defendants assert such a privilege in lieu of providing Records, they shall provide Plaintiff with the following: (1) the title of the Record; (2) the date of the Record; (3) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (4) the name and title of each

addressee and recipient; (5) a description of the contents of the Record; and (6) the privilege asserted by Settling Defendants.  If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States in redacted form to mask the privileged portion only.  Settling Defendants shall retain all Records that they claim to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in the Settling Defendants' favor.

   c. No Records created or generated pursuant to the requirements of this Consent Decree shall be withheld from the United States on the grounds that they are privileged or confidential.

  99. No claim of confidentiality or privilege shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## XXV. **RETENTION OF RECORDS**

  100. Until ten years after Settling Performing Defendants' receipt of EPA's notification pursuant to Paragraph 45.b (Completion of the Work), each Settling Performing Defendant and Owner Settling Defendant shall preserve and retain all non-identical copies of Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Site, provided, however, that Settling Performing Defendants and Owner Settling Defendant who are potentially liable as owners or operators of the Site must retain, in addition, all Records that relate to the liability of any other person under CERCLA with respect to the Site.  Each Settling Performing Defendant and Owner Settling Defendant must also retain, and instruct its

contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to the performance of the Work, provided, however, that each Settling Performing Defendant (and its contractors and agents) and Owner Settling Defendant must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned Records required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

101. At the conclusion of this record retention period, Settling Performing Defendants and Owner Settling Defendant shall notify the United States at least 90 days prior to the destruction of any such Records, and, upon request by the United States, Settling Performing Defendants and Owner Settling Defendant shall deliver any such Records to EPA. Settling Performing Defendants and Owner Settling Defendant may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Performing Defendants and/or Owner Settling Defendant assert such a privilege, they shall provide Plaintiff with the following: (a) the title of the Record; (b) the date of the Record; (c) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (d) the name and title of each addressee and recipient; (e) a description of the subject of the Record; and (f) the privilege asserted by Settling Performing Defendants and/or Owner Settling Defendant. If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States in redacted form to mask the privileged portion only. Settling Performing Defendants and Owner Settling Defendant shall retain all Records that they claim to be privileged until the United States has had a reasonable opportunity to dispute the privilege

88

claim and any such dispute has been resolved in the Settling Performing Defendants' and Owner Settling Defendant's favor. However, no Records created or generated pursuant to the requirements of this Consent Decree shall be withheld on the grounds that they are privileged or confidential.

102.    Each Settling Defendant certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed, or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Site since the earlier of notification of potential liability by the United States or the State or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA requests for information regarding the Site pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

## XXVI. NOTICES AND SUBMISSIONS

103.    Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided. Written notice as specified in this Section shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, the State, and Settling Defendants respectively. Notices required to be sent to EPA, and not to the United States, under the terms of this Consent Decree should not be sent to the U.S. Department of Justice.

As to the United States:    Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Attn: DOJ Case No. 90-11-3-07706

And    Chief, Environmental Defense Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Attn: DOJ Case No. 90-11-6-19228

As to EPA:    Director, Superfund Division
United States Environmental Protection Agency, Region 5
77 West Jackson Blvd.
Chicago, Illinois 60604

Timothy Fischer (Mail Code SR-6J)
EPA Project Coordinator
U.S. Environmental Protection Agency, Region 5
77 West Jackson Blvd.
Chicago, Illinois 60604

Maria Gonzalez (Mail Code C-14J)
Associate Regional Counsel
U.S. Environmental Protection Agency, Region 5
77 West Jackson Blvd.
Chicago, Illinois 60604

and

As to the EPA Regional Resource Management Division    Dale Meyer (Mail Code MF-10J)
Regional Comptroller
Resource Management Division
U.S. Environmental Protection Agency, Region 5
77 West Jackson Blvd.
Chicago, Illinois 60604

and

90

|                       |                                              |
|-----------------------|----------------------------------------------|
| As to the State:      | Scott Glum                                   |
|                       | Site Coordinator                             |
|                       | Ohio Environmental Protection Agency         |
|                       | Southwest District Office                    |
|                       | Division of Environmental Response and       |
|                       | Revitalization                               |
|                       | 401 East Fifth Street                        |
|                       | Dayton, OH  45402-2911                       |

and

|                       |                                              |
|-----------------------|----------------------------------------------|
| As to Settling        | Susan M. Franzetti                           |
| Defendants:           | Nijman Franzetti, LLP                        |
|                       | 10 S. LaSalle St., Suite 3600                |
|                       | Chicago, IL 60603                            |

## XXVII. **RETENTION OF JURISDICTION**

104.    This Court retains jurisdiction over both the subject matter of this Consent Decree and Settling Defendants for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution).

## XXVIII. **APPENDICES**

105.    The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the ROD.

"Appendix B" is the SOW.

"Appendix C" are maps of the Lammers Barrel Factory Property.

"Appendix D" is the draft form of Proprietary Controls.

"Appendix E" contains the performance guarantee forms.

"Appendix F" is a list of Settling Performing Defendants.

"Appendix G" is a list of Settling Non-Performing Defendants and their payments.

XXIX. <strong>COMMUNITY INVOLVEMENT</strong>

106.    If requested by EPA, Settling Performing Defendants shall participate in community involvement activities pursuant to the community involvement plan to be developed by EPA.  EPA will determine the appropriate role for Settling Performing Defendants under the Plan.  Settling Performing Defendants shall also cooperate with EPA in providing information regarding the Work to the public.  As requested by EPA, Settling Performing Defendants shall participate in the preparation of such information for dissemination to the public and in public meetings that may be held or sponsored by EPA to explain activities at or relating to the Site.

107.    Within 60 days after a request by EPA, Settling Performing Defendants also shall provide EPA with a Technical Assistance Plan ("TAP") for arranging (at Settling Performing Defendants' own expense, up to $50,000) for a qualified community group: (a) to receive services from (an) independent technical advisor(s) who can help group members understand Site cleanup issues; and (b) to share this information with others in the community during the Work conducted pursuant to this Consent Decree.  The TAP shall state that Settling Performing Defendants will provide and arrange for any additional assistance needed if the selected community group demonstrates such a need as provided in the SOW.  Upon its approval by EPA, the TAP shall be incorporated into and enforceable under this Consent Decree.

108.    Costs incurred by the United States under this Section, including the costs of any technical assistance grant under Section 117(e) of CERCLA, 42 U.S.C. § 9617(e), shall be

considered Future Response Costs that Settling Performing Defendants shall pay pursuant to Section XVI (Payments for Response Costs).

## XXX. **MODIFICATION**

109.     Except as provided in Paragraph 14 (Modification of SOW or Related Work Plans), material modifications to this Consent Decree, including the SOW, shall be in writing, signed by the United States and Settling Defendants, and shall be effective upon approval by the Court.  Except as provided in Paragraph 14, non-material modifications to this Consent Decree, including the SOW, shall be in writing and shall be effective when signed by duly authorized representatives of the United States and Settling Defendants.  A modification to the SOW shall be considered material if it fundamentally alters the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(ii).  Before providing its approval to any modification to the SOW, the United States will provide the State with a reasonable opportunity to review and comment on the proposed modification.

110.     Modifications (non-material or material) that do not affect the obligations of or the protections afforded to the Settling Non-Performing Defendants may be executed without the signatures of the Settling Non-Performing Defendants.

111.     Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise, or approve modifications to this Consent Decree.

## XXXI. **LODGING AND OPPORTUNITY FOR PUBLIC COMMENT**

112.     This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or

considerations that indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

113.     If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXII. **SIGNATORIES/SERVICE**

114.     Each undersigned representative of a Settling Defendant to this Consent Decree and the undersigned Deputy Chief of the Environment Enforcement Section of the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

115.     Each Settling Defendant agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified Settling Defendants in writing that it no longer supports entry of the Consent Decree.

116.     Each Settling Defendant shall identify, on the attached signature page, the name, address, and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Settling Defendants agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons. Settling Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXXIII. **FINAL JUDGMENT**

117.    This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties regarding the settlement embodied in the Consent Decree.  The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

118.    Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States and Settling Defendants.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS _____ DAY OF _____, 2013.


_____


UNITED STATES DISTRICT JUDGE
Southern District of Ohio

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR THE UNITED STATES OF AMERICA:

Jan 30, 2014
Date

THOMAS A. MARIANI
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

STEVEN D. ELLIS
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P. O. Box 7611
Washington, D.C. 20044-7611

DANIEL R. DERTKE
Senior Attorney
Environmental Defense Section
Environment and Natural Resources Division
U.S. Department of Justice
P. O. Box 7611
Washington, D.C. 20044-7611

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

CARTER M. STEWART
United States Attorney
Southern District of Ohio

MARGARET SCHUTTE
Bar No. 0078968
Assistant United States Attorney
Southern District of Ohio
200 West Second Street
Dayton, Ohio 45402

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

7/31/2013
Date

RICHARD C. KARL
Director, Superfund Division
U.S. Environmental Protection Agency
Region 5
77 W. Jackson Blvd.
Chicago, Illinois 60604

MARIA GONZALEZ
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 W. Jackson Blvd.
Chicago, Illinois 60604

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR  3M Company
       **[Name of Settling Defendant (Please Print)]**

June 13 , 2013                    Signature: _R.a. Paschke_
Date

                          Name (print):    Robert A. Paschke

                          Title:           Manager, Corporate
                                           Environmental Program

                          Address:         3M Center

                                           Bldg. 224-5W-17

                                           St. Paul, MN  55144

Agent Authorized to Accept Service on behalf of Above-signed Party

                          Name (print):    Nancy K. Peterson

                          Title:           Partner

                          Address:         411 E. Wisconsin Ave.
                                           Suite 2350
                                           Milwaukee, WI  53202


                          Phone:           414-277-5515

                          Email:           nancy.peterson@quarles.com

[NOTE:  A separate signature page must be signed by each settler.]

99

Signature Page for Consent Decree regarding the Lammers Barrel Superfund Site

**FOR:** Akzo Nobel Coatings Inc., successor-in-interest to Hanna Chemical Coatings Company and Reliance Universal, Inc.

**[Name of Settling Defendant (Please Print)]**

July 3rd , 2013
Date

Signature: _____     Signature: _____

Name (print): *Charles S K Scudder*     Name (print): *Jason Pollack*

Title: *Vice President & Secretary*     Title: *Assistant Secretary*

Address: *120 White Plains Rd*     Address: *120 White Plains Rd*
*Suite 300*     *Suite 300*
*Tarrytown, NY 10591*     *Tarrytown, NY 10591*

Agent Authorized to Accept Service on behalf of Above-signed Party

Name (print): *CT Corporation*
Title: _____

Address: *111 Eighth Avenue*
*13th Floor*
*New York, NY 10011*

Phone: *212-590-9245*

Email: _____

[NOTE: A separate signature page must be signed by each settler.]

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR  Alcoa Inc.
    **[Name of Settling Defendant (Please Print)]**

_June 17_, 2013
Date

Signature: _John_

Name (print): _John A. Kenna_

Title: _Vice President - Tax_

Address: 201 Isabella St.

Pittsburgh, PA

15212-5858

Agent Authorized to Accept Service on behalf of Above-signed Party

Name (print): Karyllan Mack

Title: Counsel

Address: K&L Gates LLP
One Newark Center, 10th Fl
Newark, NJ
07102

Phone: 973-848-4043

Email: karyllan.mack@klgates.com

[NOTE:  A separate signature page must be signed by each settler.]

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

**FOR** _____Arkema Inc. (For M & T Chemicals, Inc.)_____
**[Name of Settling Defendant (Please Print)]**

June 12, , 2013
Date

Signature: _____

Name (Print): _____William J. Hamel_____

Title: _Sr. Vice President, General Counsel_

Address:  900 First Avenue
      King of Prussia, PA  19406


Agent Authorized to Accept Services on behalf of Above-signed Party

Name (print): Corporation Service Company

Title:    _____N/A_____

Address:  801 Adlai Stevenson Drive
      Springfield, IL  62703_____

Phone:   _800-858-5294_____

Email:    _____N/A_____


[NOTE: A separate signature page must be signed by each settler.]

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR _ASHLAND, INC._____
     **[Name of Settling Defendant (Please Print)]**

_July 2_, 2013      Signature: _Richard W_
Date

                    Name (print): _Richmond L. Williams_

                    Title: _Chief Counsel Environmental Litigation_

                    Address: _500 Hercules Road Research Center Wilmington, DE 19808_

Agent Authorized to Accept Service on behalf of Above-signed Party

                    Name (print): _Richmond L. Williams_

                    Title: _Chief Counsel Environmental Litigation_

                    Address: _500 Hercules Road Research Center Wilmington, DE 19808_

                    Phone: _302-594-7020_

                    Email: _rlwilliams@ashland.com_

[NOTE: A separate signature page must be signed by each settler.]

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR  BP  PRODUCTS  NORTH  AMERICA  INC.
    **[Name of Settling Defendant (Please Print)]**

_June 18_ , 2013
Date

Signature: _Cynthia D. Kezos_

Name (print):  Cynthia D. Kezos

Title:  Strategy Manager

Address:  4 Centerpointe

LPR 2-232

La Palma, CA  90623

Agent Authorized to Accept Service on behalf of Above-signed Party

Name (print):  Cynthia D. Kezos

Title:  Strategy Manger

Address:  4 Centerpointe

LPR 2-232

La Palma, CA  90632

Phone:  714-228-6708

Email:  cindy.kezos@bp.com

[NOTE: A separate signature page must be signed by each settler.]

99

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

**FOR** CLOPAY CORPORATION
    **[Name of Settling Defendant (Please Print)]**

June 25 , 2013
Date

Signature: _[signature]_

Name (print): David E. Troller

Title: Vice President, Secretary and Chief Legal Counsel

Address: 8585 Duke Blvd.

Mason, OH 45040

Agent Authorized to Accept Service on behalf of Above-signed Party

Name (print): David E. Troller

Title: Vice President, Secretary and Chief Legal Counsel

Address: 8585 Duke Blvd.
Mason, OH 45040

Phone: 513/770-3935

Email: dtroller@clopay.com

[NOTE: A separate signature page must be signed by each settler.]

99

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR COPELAND CORPORATION LLC
 **[Name of Settling Defendant (Please Print)]**

June 21 , 2013
Date

Signature: _Christine E. Carney_

Name (print): Christine E. Carney

Title: Authorized Signatory

Address: 8000 West Florissant Avenue

St. Louis, MO

63136-8506

Agent Authorized to Accept Service on behalf of Above-signed Party

Name (print): Stephen L. Clarke

Title: Director Real Estate and Environmental Affairs

Address: [Same as above]

Phone: 314-553-1953

Email:

[NOTE: A separate signature page must be signed by each settler.]

99

Signature Page for Consent Decree regarding the Lammers Barrel Superfund Site

FOR        Crown Beverage Packaging, LLC  (on Behalf of Continental Can Company)
**[Name of Settling Defendant (Please Print)] ]**

JUNE 11 , 2013
Date

Signature: _____

Name (print):    Michael J. Rowley

Title:    Assistant General Counsel

Address:    Crown Beverage Packaging, LLC

One Crown Way

Philadelphia, PA 19154


Agent Authorized to Accept Service
on behalf of Above-signed Party:

Name (print):    Robert P. Harris

Title:    Attorney

Address:    180 N. Michigan Ave.

Suite 2105

Chicago, IL  60601


Phone:    312-236-7587

Email:    rpharrislaw@aol.com

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR _C. P. INC._
      **[Name of Settling Defendant (Please Print)]**

_JUNE 10_ , 2013
Date

Signature: _[signature]_

Name (print): _SCOTT FINDLEY_

Title: _VICE PRESIDENT_

Address: _C. P. INC._
_Box 1049 South 2nd & Water St._
_Connersville, IN 47331_

Agent Authorized to Accept Service on behalf of Above-signed Party

Name (print): _E. SEAN Griggs_

Title: _LEGAL COUNSEL_

Address: _Barnes & Thornburg LLP_
_11 So. Meridian St_
_Indianapolis, IN_
_46204_

Phone: _(317) 231-7793_

Email: _sgriggs@btlaw.com_

[NOTE: A separate signature page must be signed by each settler.]

99

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR _CUMMINS INC._____

**[Name of Settling Defendant (Please Print)]**

_June 10_____, 2013

Date

Signature: _~signature~_

Name (print): _Natalie J. Stucky_

Title: _Senior Counsel_

Address: _One American Square_

_Suite 1800_

_Indianapolis, IN 46282_

Agent Authorized to Accept Service on behalf of Above-signed Party

Name (print): _Natalie J. Stucky_

Title: _Senior Counsel_

Address: _One American Square_
_Suite 1800_
_Indianapolis IN_
_46282_

Phone: _(317) 610-2462_

Email: _natalie.stucky@cummins.com_

[NOTE: A separate signature page must be signed by each settler.]

99

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR _EGYPTIAN LACQUER MFG. CO., INC._
**[Name of Settling Defendant (Please Print)]**

_JUNE 18_, 2013
Date

Signature: _K. M._

Name (print): _KERRY MATTOX_

Title: _PRESIDENT_

Address: _113 FORT GRANGER DR_

_FRANKLIN, TN 37064_

_____

Agent Authorized to Accept Service on behalf of Above-signed Party

Name (print): _WILLIAM L PENNY_

Title: _ATTORNEY FOR ELMCO_

Address: _STITES & HARBISON PLLC_
_401 COMMERCE ST_
_SUITE 800_
_NASHVILLE, TN 37219_

Phone: _615-782-2308_

Email: _WILLIAM.PENNY@STITES.COM_

[NOTE: A separate signature page must be signed by each settler.]

99

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR  *Ford Motor Company*

**[Name of Settling Defendant (Please Print)]**

_June 18_, 2013

Date

Signature:  _Louis Ghilardi_

Name (print):  **Louis J. Ghilardi**

Title:  **Assistant Secretary**

Address:  FORD MOTOR COMPANY
ONE AMERICAN ROAD
DEARBORN, MI 48126

Agent Authorized to Accept Service on behalf of Above-signed Party

Name (print):  CT Corporation

Title:

Address:  1300 E. 9th St.
Cleveland, OH 44114

Phone:  216-802-2121

Email:

[NOTE: A separate signature page must be signed by each settler.]

99

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR _____GATX Corporation_____
**[Name of Settling Defendant (Please Print)]**

July 1 , 2013
Date

Signature: _Marland O. Webb_

Name (print): MARLand O. Webb

Title: Assistant General Counsel

Address: GATX Corporation
222 W. Adams
Chicago IL 60606

Agent Authorized to Accept Service on behalf of Above-signed Party

Name (print): The Prentice-Hall Corporation
System, Inc.

Title: _____

Address: 50 West Broad Street
Suite 1800
Columbus, OH 43215

Phone: (800) 877-2556

Email: info@cscinfo.com

[NOTE: A separate signature page must be signed by each settler.]

99

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR _General Electric Company_
**[Name of Settling Defendant (Please Print)]**

June 10_____, 2013
Date

Signature: _____

Name (print): _John G. Haggard_

Title: _Executive Director_

Address: _319 Great Oaks Blvd._
_Albany, NY 12203_
_____

Agent Authorized to Accept Service on behalf of Above-signed Party

Name (print): _Steven Meier_

Title: _Project Manager_

Address: _319 Great Oaks Blvd._
_Albany, NY 12203_
_____
_____

Phone: _518-862-2711_

Email: _Steven.meier@ge.com_

[NOTE: A separate signature page must be signed by each settler.]

99

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

**FOR**        **Georgia-Pacific LLC** _____
          **[Name of Settling Defendant (Please Print)]**

June 25, 2013      Signature: _____
Date

                              Name (print): _____ Roger J. Hilarides _____

                              Title:       Senior Vice President-Compliance & Ethics

                              Address:    133 Peachtree Street, NE

                                              Atlanta, GA  30303

Agent Authorized to Accept Service on behalf of Above-signed Party

                              Name (print): _____ Alison J. Lathrop _____

                              Title:       Senior Counsel – Environmental

                              Address:    133 Peachtree Street, NE

                                              Atlanta, GA  30303

                              Phone:      404-652-4532

                              Email:       Alison.lathrop@gapac.com

[NOTE: A separate signature page must be signed by each settler.]

99

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR <u>The Goodyear Tire & Rubber Company</u>
**[Name of Settling Defendant (Please Print)]**

<u>June 28</u>, 2013
Date

Signature: _Donald E. Stanley_

Name (print): <u>Donald E. Stanley</u>

Title: <u>V.P., Prod. Qual. & Plant Tech.</u>

Address: <u>200 Innovation Way</u>

<u>Akron, OH 44316</u>

_____

Agent Authorized to Accept Service on behalf of Above-signed Party

Name (print): <u>Steven C. Bordenkircher</u>

Title: <u>Senior Legal Counsel</u>

Address: <u>The Goodyear Tire & Rubber Co.</u>
<u>200 Innovation Way</u>
<u>Akron, OH 44316</u>

_____

Phone: <u>330-796-6738</u>

Email: <u>steven_bordenkircher@goodyear.com</u>

[NOTE: A separate signature page must be signed by each settler.]

99

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR _____ Honeywell International Inc. _____

**[Name of Settling Defendant (Please Print)]**

7/12/2013 , 2013

Date

Signature: _Chuck Geadelman_

Name (print): Chuck Geadelmann

Title: Corporate Remediation Manager

Address: 1985 Douglas Drive N, MN10-132B

Golden Valley, MN 55422

_____

Agent Authorized to Accept Service on behalf of Above-signed Party

Name (print): Brett E Marston

Title: Counsel for Honeywell International Inc.

Address: Arnold & Porter LLP

555 Twelfth St. NW

Washington DC 2004-1206

_____

Phone: 202-942-6836

Email: brett.marston@aporter.com

[NOTE: A separate signature page must be signed by each settler.]

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

**FOR** ___Illinois Tool Works Inc._____

        **[Name of Settling Defendant (Please Print)]**

___July 2nd___, 2013  
Date

Signature: _Chris O'Herlihy_

Name (print): ___Christopher A. O'Herlihy___

Title: ___Executive Vice President___

Address: ___Illinois Tool Works inc.___

___3600 West Lake Avenue___

___Glenview, IL 60026___

Agent Authorized to Accept Service on behalf of Above-signed Party

Name (print): ___Ken Brown, CHMM___

Title: ___Manager of Env. & Chem. Compliance___

Address: ___Illinois Tool Works Inc.___  
___3600 West Lake Avenue___  
___Glenview, IL 60026___

Phone: ___847-657-4843___

Email: ___kbrown@itw.com___

[NOTE: A separate signature page must be signed by each settler.]

99

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR _International Paper Company_
**[Name of Settling Defendant (Please Print)]**

_7/8_, 2013
Date

Signature: _Brian E. Heim_

Name (print): _Brian E. Heim_

Title: _Chief Counsel_

Address: _6400 Poplar Ave_
_Memphis, TN_
_38197_

Agent Authorized to Accept Service on behalf of Above-signed Party

Name (print): _Brian E. Heim_

Title: _Chief Counsel, Environment_

Address: _6400 Poplar Ave_
_Memphis, TN_
_38197_

Phone: _901-449-3824_

Email: _brian.heim@ipaper.com_

[NOTE:  A separate signature page must be signed by each settler.]

99

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR I.V.C. Industrial Coatings, Inc.
[Name of Settling Defendant (Please Print)]

July 3 , 2013          Signature:
Date

Name (print):     Michael S. McCracken

Title:            President

Address:          I.V.C. Industrial Coatings, Inc.

                  2831 East Industrial Park Drive

                  Brazil, IN 47834


Agent Authorized to Accept Service on behalf of Above-signed Party

Name (print):     Philip B. McKiernan

Title:            Attorney

Address:          Hackman Hulett & Cracraft, LLP
                  111 Monument Circle
                  Suite 3500
                  Indianapolis, IN 46204

Phone:            317-636-5401

Email:            PMcKiernan@hhclaw.com

[NOTE: A separate signature page must be signed by each settler.]

99

**Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site**

> Meritor, Inc., for itself and on behalf of its current and former affiliates and predecessors and their affiliates and predecessors including, without limitation, the entities designated by U.S. EPA as "Arvin Industries" and "Roll Coater" that did business at various times under the following names:

**FOR** <u>ArvinMeritor, Inc.; Arvin Industries, Inc.; and Roll Coater, Inc.</u>

**[Name of Settling Defendant (Please Print)]**

<u>7 - 3</u>, 2013        Signature: _____
**Date**

Name (print):   Vernon G. Baker, II

Title:          Senior Vice President and General Counsel

Address:        2135 W. Maple Rd.

                Troy, MI 48084

                _____

**Agent Authorized to Accept Service on behalf of Above-signed Party**

Name (print):   CT Corporation

Title:          _____

Address:        1300 East 9th Street
                Cleveland, OH 44114
                _____
                _____

Phone:          614-621-1919

Email:          _____

**[NOTE:  A separate signature page must be signed by each settler.]**

99

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR _Momentive Specialty Chemicals Inc._
**[Name of Settling Defendant (Please Print)]**

_June 11_, 2013          Signature: _K E Koster_
Date

Name (print): _Karen E. Koster_

Title: _Executive Vice-President - EHS_

Address: _180 E. Broad St._
_Columbus, OH 43215_
_____

Agent Authorized to Accept Service on behalf of Above-signed Party

Name (print): _Stephanie S. Couhig_

Title: _Senior EHS Counsel_

Address: _180 E. Broad St._
_Columbus, OH 43215_
_____
_____

Phone: _(614) 225-3369_

Email: _stephanie.couhig@momentive.com_

[NOTE: A separate signature page must be signed by each settler.]

99

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR _MORTON INTERNATIONAL, LLC_
**[Name of Settling Defendant (Please Print)]**

_JUNE 26_ , 2013
Date

Signature: _Robert L Casselberry Jr_

Name (print): _ROBERT L CASSELBERRY JR_

Title: _AUTHORIZED REPRESENTATIVE_

Address: _3100 STATE ROAD_
_CROYDON PA 19021_

Agent Authorized to Accept Service on behalf of Above-signed Party

Name (print): _CT CORPORATION_

Title:

Address: _150 WEST MARKET ST._
_SUITE 800_
_INDIANAPOLIS, IN 46204_

Phone: _317-352-3500_

Email:

[NOTE: A separate signature page must be signed by each settler.]

99

Signature Page for Consent Decree regarding the Lammers Barrel Superfund Site

**FOR_____ Navistar, Inc. on behalf of Navistar International Corp. f/k/a International Harvester**

____July 2_____, 2013          Signature: _____
Date

                                    Name (print):     Curt Kramer

                                    Title:            Associate General Counsel

                                    Address:          2701 Navistar Drive

                                                      Lisle, IL 60532 _____

                                                      _____

Agent Authorized to Accept Service on behalf of Above-signed Party

                                    Name (print):     Christopher P. Perzan

                                    Title:            Senior Counsel

                                    Address:          2701 Navistar Drive
                                                      Lisle, IL 60532 _____
                                                      _____
                                                      _____

                                    Phone:            3313323524

                                    Email:            ___chris.perzan@navistar.com_

[NOTE:  A separate signature page must be signed by each settler.]

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR ___OXY USA Inc._____

          **[Name of Settling Defendant (Please Print)]**

___6 - 7_____, 2013      Signature: _____
Date

                            Name (print):    Mike Anderson_____

                            Title:          Vice President_____

                            Address:     Glenn Springs Holdings, Inc.

                                          5005 LBJ Freeway, Suite 1350

                                          Dallas, Texas 75244

Agent Authorized to Accept Service on behalf of Above-signed Party

                            Name (print):    Frank A. Parigi_____

                            Title:          General Counsel_____

                            Address:     Glenn Springs Holdings, Inc.

                                          5005 LBJ Freeway, Suite 1350

                                          Dallas, Texas 75244

                            Phone:         (972) 687-7503_____

                            Email:         Frank_Parigi@oxy.com___

[NOTE:  A separate signature page must be signed by each settler.]

99

**Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site**

**FOR** PHARMACIA LLC
     **[Name of Settling Defendant (Please Print)]**

JUNE 10     , 2013                    Signature:
**Date**

Name (print):     L. Glen Kurowski

Title:            Director, Environmental Affairs

Address:          Monsanto Company, Attorney-in-Fact
                  for Pharmacia LLC
                  800 N. Lindbergh Blvd, LC1B
                  St. Louis, MO 63167


**Agent Authorized to Accept Service on behalf of Above-signed Party**

Name (print):     Randy J. White

Title:            Environmental Manager

Address:          Monsanto Company
                  800 N. Lindbergh Blvd, LC1B
                  St. Louis, MO 63167

Phone:            314-694-4722

Email:            randy.j.white@monsanto.com


[NOTE:  A separate signature page must be signed by each settler.]

99

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

**FOR** PPG Industries, Inc.
      **[Name of Settling Defendant (Please Print)]**

July 9 , 2013      Signature: _Diane M. Kappas_
Date

                  Name (print):   Diane M. Kappas

                  Title:   Vice President EHS

                  Address:   One PPG Place

                               Pittsburgh, PA 15272

Agent Authorized to Accept Service on behalf of Above-signed Party

                  Name (print):   Steven F. Faeth

                  Title:   Corporate Counsel EHS

                  Address:   One PPG Place

                               Pittsburgh, PA 15272

                  Phone:   412.434.3799

                  Email:   sfaeth@ppg.com

[NOTE: A separate signature page must be signed by each settler.]

99

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR _Robbins & Myers, Inc._
      **[Name of Settling Defendant (Please Print)]**

_June 7_ , 2013
Date

Signature: _____

Name (print): _Raymond W. Chang_

Title: _VP, Assistant General Counsel &_
          _Assistant Corporate Secretary_

Address: _7909 Parkwood Circle_

         _Houston, Texas_

         _77036_

Agent Authorized to Accept Service on behalf of Above-signed Party

Name (print): _Raymond W. Chang_

Title: _VP, Assistant General Counsel &_
       _Assistant Corporate Secretary_

Address: _7909 Parkwood Circle_
        _Houston, Texas_
        _77036_

Phone: _713 - 346 - 7607_

Email: _Raymond.Chang@nov.com_

[NOTE: A separate signature page must be signed by each settler.]

99

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR _Shell Oil Company_
        **[Name of Settling Defendant (Please Print)]**

_6-17-13_ , 2013
Date

Signature: _WmE Platt III_

Name (print): _William E. Platt III_

Title: _Senior Manager, Discontinued Operations, Downstream US and Canada_

Address: _Shell Oil Products US_
_One Shell Plaza, St. 2974_
_910 Louisiana Street_
_Houston, Texas 77002_

Agent Authorized to Accept Service on behalf of Above-signed Party

Name (print): _CT Corporation System_

Title: _____

Address: _1300 E. 9th Street_
_Cleveland, OH 44114_
_____
_____

Phone: _216-802-2121_

Email: _____

[NOTE: A separate signature page must be signed by each settler.]

99

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR    **The Sherwin-Williams Company**
           **[Name of Settling Defendant (Please Print)]**

June 17, , 2013        Signature:
Date

                        Name (print):    Catherine M. Kilbane

                        Title:    Exec VP Sr. Sec & Gen Counsel

                        Address:    101 Prospect Avenue

                                        Cleveland, Ohio 44115

Agent Authorized to Accept Service on behalf of Above-signed Party

                        Name (print):    Allen J. Danzig

                        Title:    Associate Gen Counsel-Environmental

                        Address:    101 Prospect Avenue
                                        Cleveland, Ohio 44115

                        Phone:    (216) 566-2482

                        Email:    allen.j.danzig@sherwin.com

[NOTE: A separate signature page must be signed by each settler.]

99

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR *Thomas + Betts Corp., as successor to Lanson + Sessions Co., as successor to Angell Manufacturing*
**[Name of Settling Defendant (Please Print)]**

*June 14,* , 2013
Date

Signature: *[signature]*

Name (print): *Michael J. Geizer*

Title: *Assistant General Counsel*

Address: *Thomas + Betts Corp*
*8155 T+B Blvd*
*Memphis, TN 38125*

Agent Authorized to Accept Service on behalf of Above-signed Party

Name (print): *Michael J. Geiger*

Title: *Assistant General Counsel*

Address: *Thomas + Betts Corp.*
*8155 T+B Blvd*
*Memphis, TN 38125*

Phone: *901 252 5000*

Email: *michael.geiger@tnb.com*

[NOTE:  A separate signature page must be signed by each settler.]

99

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

United States Steel Corporation and its subsidiaries for
**FOR**   USS Chemicals Division Lincoln Molded Plastics
**[Name of Settling Defendant (Please Print)]**

June 1 2 , 2013
Date

Signature:

Name (print):   David L. Smiga

Title:   Assistant General Counsel –
Environmental

Address:   United States Steel Corporation
600 Grant Street – Suite 1500
Pittsburgh, PA  15219

Agent Authorized to Accept Service on behalf of Above-signed Party

Name (print):   Andrew G. Thiros

Title:   Attorney – Environmental

Address:   United States Steel Corporation
600 Grant Street – Suite 1500
Pittsburgh, PA  15219

Phone:   412-433-2983

Email:   agthiros@uss.com

[NOTE:  A separate signature page must be singed by each settler.]

99

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR    United Technologies Corporation on behalf of Lear Corporation
Automotive Systems, f/k/a Sheller-Globe Corporation
**[Name of Settling Defendant (Please Print)]**

June 26 , 2013
Date

Signature: _____

Name (print):   Richard Bennett

Title:   V.P., Environmental
Health & Safety

Address:   One Financial Plaza

Hartford, CT 06103

_____

Agent Authorized to Accept Service on behalf of Above-signed Party

Name (print):   David Platt

Title:   Assistant General Counsel

Address:   One Financial Plaza
Hartford, CT 06103

Phone:   860-728-7839

Email:   david.platt@utc.com

[NOTE: A separate signature page must be signed by each settler.]

99

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR   Univar USA Inc.
_____

        **[Name of Settling Defendant (Please Print)]**

June 11_____, 2013      Signature: _____
Date

                              Name (print):    Leslie R. Schenck

                              Title:           Vice President & Associate General Counsel, Chief Compliance Officer

                              Address:       17425 NE Union Hill Road
                                              Redmond, WA   98052

Agent Authorized to Accept Service on behalf of Above-signed Party

                              Name (print):    MICHELLE ULICK ROSENTHAL

                              Title:           COUNSEL FOR UNIVAR USA INC.

                              Address:       VERIS LAW GROUP
                                              1809 SEVENTH AVE
                                              SUITE 1400
                                              SEATTLE, WA 98107

                              Phone:         (206) 535-6006

                              Email:         MICHELLE@VERISLAWGROUP.COM

[NOTE: A separate signature page must be signed by each settler.]

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR _The Valspar Corporation_____
**[Name of Settling Defendant (Please Print)]**

_July 3_____, 2013
Date

Signature: _Jeff Hayward_

Name (print): _Jeffrey J. Hayward, Esq._

Title: _Environmental & Regulatory Counsel_

Address: _P.O. Box 1461_
_Minneapolis, MN_
_55440_

Agent Authorized to Accept Service on behalf of Above-signed Party

Name (print): _Stanley Green_

Title: _Counsel_

Address: _Strauch, Fitzgerald & Green_
_118 So. Cherry Street_
_Winston-Salem, NC 27101_

Phone: _336-837-1064_

Email: _sgreen@sfandglaw.com_

[NOTE: A separate signature page must be signed by each settler.]

99

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

**FOR** Whittaker Corporation
      **[Name of Settling Defendant (Please Print)]**

July 8 _____, 2013
Date

Signature: _____

Name (print):   Eric G. Lardiere

Title:   President

Address:   1955 Surveyor Avenue

Simi Valley, CA 93063

_____

Agent Authorized to Accept Service on behalf of Above-signed Party

Name (print):   Eric G. Lardiere

Title:   President

Address:   1955 Surveyor Avenue
Simi Valley, CA 93063

_____

Phone:   (805) 526-5700, ext. 6650

Email:   eric.lardiere@meggitt.com

[NOTE:  A separate signature page must be signed by each settler.]

99

Signature Page for Consent Decree Regarding the Lammers Barrel Superfund Site

FOR   _HELEN GORBY_____
      **[Name of Settling Defendant (Please Print)]**

_7-18_____, 2013        Signature:    _Helen Gorby_
Date

                          Name (print):  _HELEN GORBY_

                          Title:         _OWNER_

                          Address:       _2854 HELEN GORBY WAY_

                                         _BEAVER CREEK_

                                         _OHIO  45431_

Agent Authorized to Accept Service on behalf of Above-signed Party

                          Name (print):  _DWAIN GORBY JR_

                          Title:         _SON - EXECUTOR_

                          Address:       _10590  SIGLER RD._

                                         _NEW CARLISLE_

                                         _OHIO  45344_

                          Phone:         _937-845-0119_

                          Email:         _____

[NOTE:  A separate signature page must be signed by each settler.]

99