UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
(AT DAYTON)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> PLAINTIFF, ) <br> ) <br> ) <br> vs. ) <br> ) <br> 3M COMPANY, *et al.*, ) <br> ) <br> DEFENDANTS. ) <br> ) <br> ) | Case No. 3:14-cv-00032WHR <br> Judge Walter H. Rice |

MEMORANDUM IN SUPPORT OF
UNOPPOSED MOTION TO ENTER CONSENT DECREE

Plaintiff, the United States of America, submits this Memorandum in Support of its Unopposed Motion to Enter Consent Decree, and respectfully requests that the Court enter the proposed Consent Decree lodged on January 31, 2014 (Doc. # 2-1). The proposed settlement would resolve the allegations set forth in the Complaint filed on the same date against the Defendants. In the Complaint, the United States alleges that the Defendants are liable parties under Sections 106, 107, and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-75, and seeks injunctive relief for the implementation of the first of two anticipated remedial actions and recovery of response costs incurred and to be incurred by the United States at the Lammers Barrel Superfund Site (the "Site") in Beavercreek, Ohio. In addition, the Consent Decree resolves the parties'

potential claims and counterclaims against two federal agencies, the Department of the Army and the Department of the Air Force (the "Settling Federal Agencies") in connection with the Site.

After publishing notice of the Consent Decree in the Federal Register and soliciting written public comments for a 30-day period and receiving none, the United States respectfully requests that this Court enter the proposed Consent Decree because it is fair, reasonable, and consistent with the purposes of CERCLA. As set forth in ¶ 112 of the Consent Decree, the Defendants consent to the entry of the Decree.

## I. Background

### A. Site-Related History

The Site includes a 2.5 acre property, where operations took place that caused the release of hazardous substances (the "Property"), plus an adjoining ditch and a contaminated aquifer underlying the Property and a contaminated portion of that aquifer extending eastward and downgradient from the Property. The Site is located at the northeast corner of the intersection of Grange Hall and East Patterson Roads in Beavercreek, and is depicted in Appendix C to the Consent Decree, Doc # 2-5, PageID # 322.[1] From 1948 until 1952, the Moran Paint Company ("Moran") manufactured paint, lacquers, and paint removers at the Property. The business relocated after its operations burned down in a 1952 fire. Later in the 1950s and during the 1960s, Anthony Kohnen and Paul Lammers operated solvent recovery and barrel reconditioning businesses at the Property. The barrel reconditioning business remained on the Property until 1969 when a two-day fire destroyed the business and burned most of the records. The solvent recovery business distilled and fractionalized waste industrial solvents. It picked up waste solvents directly from most of its customers, stored the solvents, which included chlorinated

---

[1] For ease of reference, documents filed in this Civil Action will be referred to by the Court-stamped Doc. # and PageID #.

volatile organic compounds ("CVOCs") and aromatic hydrocarbons, in above-ground storage tanks.  In the barrel reconditioning business, barrels were emptied into a drain pit that flowed into a septic tank that was subsequently pumped out.  The emptied barrels were stacked on their sides in rows on a gravel surface and were cleaned before being returned to the owners.

The Site is listed on the National Priorities List, which is the United States Environmental Protection Agency's ("EPA") list of top priority sites for remediation prepared pursuant to Section 105(a)(8)(B) of CERCLA, 42 U.S.C. § 9605(a)(8)(B).  After the Ohio Environmental Protection Agency ("Ohio EPA") detected vinyl chloride contamination in residential drinking water wells downgradient to the Property in 1985, EPA connected nine homes to an existing water main.  EPA recovered removal costs for these actions in an administrative agreement in 1990.  In 2000, EPA connected an additional four homes to a county water supply.  In 2002, 20 parties ("Respondents") agreed to perform, and in fact, did perform, a remedial investigation and feasibility study ("RI/FS") pursuant to an Administrative Order on Consent (the "AOC") to determine the nature and extent of contamination and to study and compare the feasibility of potential remedies to address the contamination at the Site.  The AOC also required the Respondents to pay EPA's response costs for overseeing the RI/FS.  In 2008, the AOC was amended to include an additional 21 Respondents.  To date, the AOC Respondents have paid $1,147,651.19 to EPA for its response costs in connection with EPA's oversight of the RI/FS process.  Most of these 41 Respondents are Settling Defendants in the proposed Consent Decree.

Following completion of the RI/FS, on September 27, 2011, and following a period of public notice and comment on a proposed remediation plan, EPA Region 5 issued a Record of Decision, for Operable Unit 1 ("OU 1") at the Site.  Based on the RI/FS, EPA determined that soils on the Property are contaminated with high levels of CVOCs, including trichloroethylene

3

and vinyl chloride.  Soils on the Property also contain high levels of benzene, toluene, ethylbenzene, and xylene (collectively "BTEX").  The aquifer is contaminated with CVOCs and an additional groundwater zone, which flows into the aquifer, is contaminated with BTEX and CVOCs.  EPA selected a remedial action to be performed only at the Property, known as Operable Unit 1 ("OU 1").  The OU 1 remedy, estimated to cost $3.4 million, includes (1) biological treatment of the impacted soils by mixing contaminated soils with a neutralizing chemical; (2) injection of a chemical into the groundwater at the Property to dechlorinate the groundwater; and (3) institutional controls, such as restrictions on the Property prohibiting residential use and the installation of drinking water wells on the property except for those installed as part of the remedial action.  See ROD, attached to Consent Decree as App. A, Doc. 2-2 at PageID # 157.

The State of Ohio has concurred in EPA's selection of the remedy.  EPA anticipates that it will respond to the remainder of contamination at the Site in a second and final remedial action, a future "OU 2" remedy, through which EPA expects to address a groundwater plume containing CVOCs downgradient (eastward) to the Site.  A number of the AOC Respondents are currently performing an RI/FS to determine the nature and extent of the contaminated plume in the groundwater and to evaluate and compare potential OU 2 remedial actions.

> B. **The Consent Decree**

The Consent Decree is actually two decrees in one.  First, it resolves the claims of the United States with respect to OU 1 with parties the United States considers to be major contributors of hazardous substances to the Site.  These are the "Settling Performing Defendants" who, with the addition of funds from the Settling Non-Performing Defendants, agree to perform the OU 1 remedial design and remedial action and to pay approximately $1.5 million for past

4

costs incurred by the United States in connection with the Site, as well as all of the United States' future response costs overseeing the OU 1 remedial action and implementation of the Consent Decree. Pursuant to the previously executed AOC, the Settling Performing Defendants will continue to perform the RI/FS for the anticipated future OU 2 remedial action. The current owner of the Property, Helen Gorby, has separate responsibilities regarding current and future uses of the Property and recording obligations with respect to those uses. She is referred to in the Consent Decree as the "Owner Settling Defendant."

Second, the Consent Decree serves as a *de minimis* Consent Decree, which, pursuant to Section 122(g) of CERCLA, 42 U.S.C. § 9622(g), resolves fully the claims of the United States related to the Site for the group of parties identified as Settling Non-Performing Defendants. These parties are identified in the Consent Decree as the Settling Non-Performing Defendants and will pay funds, rather than perform the work. Each Settling Non-Performing Defendant contributed less than one and one-quarter percent (1¼%) of the total amount of hazardous substances contributed to the Site, and the hazardous substances contributed are not significantly more toxic, or of significantly greater hazardous effect, than other hazardous substances at the Site, as set forth in Section 122(g)(1)(A) of CERCLA, 42 U.S.C. § 9622(g)(1)(A). The Settling Non-Performing Defendants will make payments to a trust fund set up by the Settling Performing Defendants, who will use the funds to pay for the OU 1 remedy and other work at the Site, such as the continuing RI/FS for OU 2. The Settling Non-Performing Defendants will also make payments to the Settling Performing Defendants to help pay for the future OU 2 remedial action. The amounts the Settling Non-Performing Defendants will pay are set forth in Appendix G to the Consent Decree, and are calculated as a percentage of the parties' fair share, plus a 50%

premium for the estimated costs of the OU 1 remedy and the OU 2 RI/FS, and a 100% premium for uncertainty in the estimated costs of the future OU 2 remedial action.

Once the Settling Performing Defendants receive the payment for the future OU 2 remedial action from the Settling Non-Performing Defendants, the Settling Performing Defendants will remit those monies to an EPA-controlled special account for the Site. Since EPA has not yet selected an OU 2 remedial action, the anticipated OU 2 remedial action is not otherwise addressed by the Consent Decree.

In addition to the Settling Non-Performing Defendants, the parties agree that the Settling Federal Agencies, the Departments of the Army and Air Force, meet the requirements of Section 122(g)(1)(A) of CERCLA, but whose contributions to the Site are so negligible that it would be unfair to require payment under the Consent Decree.

Under ¶ 79 of the Consent Decree, the United States covenants not to sue or to take administrative action against the Settling Performing Defendants and the Owner Settling Defendant pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), for past response costs, the work performed as required by the Consent Decree, and for "Future Response Costs" incurred by the United States as defined in ¶ 4 of the Consent Decree. The United States covenants not to sue or to take administrative action against the Settling Non-Performing Defendants pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), relating to the Site. Also, EPA covenants not to take administrative action against the Settling Federal Agencies pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), relating to the Site.

Standard reservations of rights are also in the Consent Decree, including, but not limited to, with respect to the Settling Non-Performing Defendants and Settling Federal Agencies, the

right of the United States to institute new proceedings in the event of discovery of information that indicates a Settling Non-Performing Defendant or Settling Federal Agency contributed to the Site more than 1.25% of the materials containing hazardous substances or contributed hazardous substances which are significantly more toxic or have significantly greater hazardous effect than other hazardous substances at the Site, and claims based on a failure by the Defendants to meet a requirement of the Consent Decree. Consent Decree at ¶ 80. In addition, Paragraph 93 provides that, if entered by this Court, the Consent Decree constitutes a judicially approved settlement for purposes of CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2), and with respect to the Settling Non-Performing Defendants and Settling Federal Agencies, CERCLA Section 122(g)(5), 42 U.S.C. § 9622(g)(5), entitling such parties to contribution protection as further described in Paragraph 93.

## II. ARGUMENT

Approval of a consent decree is a judicial act that is committed to the informed discretion of the trial court. See *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1435 (6th Cir. 1991). Courts, however, exercise this discretion in a limited and deferential manner, as the process of negotiation is normally not subject to judicial review. *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348 (6th Cir. 1986). The courts recognize a presumption in favor of voluntary settlement, which is "particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency like EPA which enjoys substantial expertise in the environmental field." *Akzo Coatings of Am.*, 949 F. 2d at 1436. In reviewing CERCLA consent decrees, in particular, courts determine "not whether the settlement is one which the court itself might have fashioned, or considers as ideal, but whether the proposed decree is fair, reasonable, and faithful to the objectives of the governing statute."

*United States v. Cannons Engineering Corp.*, 899 F.2d 79, 84 (1st Cir. 1990); see also *Akzo Coatings of Am.*, 949 F.2d at 1435 (6th Cir. 1991); H.R. Rep. No. 253, Pt. 3, 99th Cong., 1st Sess. 19 (1985). The court in *Cannons Engineering* noted that the legislative history supporting the Superfund Amendments and Reauthorization Act of 1986 makes pellucid that, when such consent decrees are forged, the trial court's review function is only to "satisfy itself that the settlement is reasonable, fair, and consistent with the purposes that CERCLA is intended to serve." H.R. No. 253, Part 3, 99th Cong., 1st Sess. 19 (1985). "Reasonableness, fairness, and fidelity to the statute are, therefore, the horses which district judges must ride." *Cannons Engineering*, 899 F.2d at 85. See also *Akzo Coatings of Am.*, 949 F.2d at 1426. The Court should enter the proposed Consent Decree because it is fair, reasonable, is in the public interest and is consistent with the goals of CERCLA. See *Jones & Laughlin Steel*, 804 F.2d at 351 (district court may review the proposed consent judgment to determine whether it represents a resolution that is fair, reasonable and consistent with the public interest).

First, the settlement is fair both procedurally and substantively. The Consent Decree is procedurally fair because it reflects the agreement of the parties and their counsel after good faith settlement negotiations that took place over a 21 month period. See *Akzo Coatings of America*, 949 F.2d at 1435 (holding that, to determine fairness, courts evaluate "the strength of plaintiff's case, the good faith efforts of the negotiators, the opinions of counsel, and the possible risks involved in the litigation if the settlement is not approved"). Thus, the Consent Decree is procedurally fair because it was negotiated at arms-length and in good faith by counsel for the Settling Performing and Non-Performing Defendants and the Government. Although Settling Owner Defendant chose to not have counsel during the negotiations, the Consent Decree was drafted to clearly identify her obligations; she was given the opportunity to ask, and did ask

through her nephew, over a period of several months, questions of both the Government's and Settling Defendants' counsel about her obligations and the environmental covenant that she agreed to record.

Substantive fairness requires the Court to consider "concepts of corrective justice and accountability: the party should bear the cost of the harm for which he is legally liable." *Cannons Engineering*, 899 F.2d at 87. The starting point for the substantive fairness inquiry is usually the comparative fault of the entities involved in the contamination. See, e.g., *Cannons Engineering*, 899 F.2d at 87-88. In CERCLA cases, "precise data relevant to determining . . . the role of each PRP is often unavailable." Id. at 88. The Defendants hired a professional allocator, who prepared an allocation that the United States reviewed and considered reasonable to cover the apportionment of obligations set forth in the Consent Decree for the Settling Performing Defendants, the Settling Non-Performing Defendants, the Settling Federal Agencies, parties who have previously reached agreement with the United States for their liability with respect to the Site in bankruptcy proceedings, such as General Motors Corporation and Huffy Corporation, and other parties that did not reach agreement with the Defendants and the United States. The parties who participated in the settlement discussions had opportunities to provide information and feedback to the allocator as part of the allocation process. The allocator relied upon documents related to the Site, administrative depositions taken by EPA, depositions taken by the Department of Justice to perpetuate testimony pursuant to Rule 27, Fed. R. Civ. P.,[2] and other documents provided by the settlement participants.

Relying upon the allocator's findings, the Defendants divided up responsibility for their obligations with respect to the Site. Those Defendants whose allocation exceeded 1¼ percent of

---

[2] Order authorizing depositions to preserve testimony, *In Re the Matter of Petition of the United States of America to Perpetuate Testimony Pursuant to Rule 27 of the Federal Rules of Civil Procedure*, Case No. 3-03 MC 5 (S.D. Ohio, June 18, 2003).

responsibility for the Site were classified as the Settling Performing Defendants and have agreed to be jointly and severally responsible implementing the OU 1 remedial action and the payment of response costs. Those whose allocations did not exceed 1¼ percent of the total amount of hazardous substances contributed to the Site, and were considered to have met the requirements for *de minimis* parties under CERCLA Section 122(g)(1)(A), 42 U.S.C. § 9622(g)(1)(A), were classified as Settling Non-Performing Defendants and, do not have responsibilities for the cleanup of the Site beyond their monetary contributions based upon the allocation. Further the Defendants and EPA agreed that the contributions of the Settling Federal Agencies to the Site were so negligible as to not require a payment under the Consent Decree. In light of all of these factors, the Consent Decree is substantively fair.

Second, the proposed Consent Decree is reasonable. "In determining whether a consent decree is 'reasonable' courts have considered the following: the nature/extent of hazards; the degree to which the remedy will adequately address the hazards; possible alternatives for remedying hazards; and the extent to which the decree furthers the goals of the statute." *Akzo Coatings of Am.*, 949 F.2d at 1436 (internal citations omitted). In this case, the Settling Performing Defendants, with the aid of funds from the Settling Non-Performing Defendants, agree to implement the OU 1 remedial action at the Site selected by EPA. This includes the application of chemicals to neutralize the hazardous substances in the Property's soils and the injection of chemicals to neutralize the hazardous substances in the groundwater located at the Property. Moreover, the Owner Settling Defendant agreed to implement the institutional controls to ensure the efficacy of the remedy at the Site and protect the public and the environment. Thus, the adequacy of the remedy, and its protectiveness of public health and the environment is assured. As discussed above, the United States has not received any comments

or objections to the Consent Decree in response to its invitation for public comment.  Settlement in this case is preferable to litigation because the implementation of the Site remedy through monitoring, operation and maintenance and institutional controls will proceed expeditiously and not be delayed through extended litigation.

The Consent Decree is also adequate as a vehicle to recover the response costs incurred by the United States.  Since a number of potentially responsible parties who have contributed to the hazardous nature of the Site are not viable or defunct, and thus unable to contribute their fair share of responsibility to the cleanup of the site or payment of response costs, EPA has determined that it is appropriate to compromise $850,000 from the total amount of response costs incurred by the United States in this action, consistent with EPA's June 3, 1996 Interim Guidance on Orphan Share Compensation for Settlors of Remedial Design/Remedial Action and Non-Time Critical Removals, the Defendants ("EPA's Orphan Share Policy"), attached to this Memorandum as Attachment A.  EPA issued its Orphan Share Policy in part "to provide incentives for parties to voluntarily perform cleanups…recognize cooperative parties, keep transaction costs low, and use readily available information."  EPA's Orphan Share Policy at 2 (Attachment A at 2).  The $850,000 orphan share deduction, calculated under EPA's Orphan Share Policy represents 25% of the $3.4 million cost of the OU 1 remedial action as estimated in the OU 1 Record of Decision.  Other than application of the Orphan Share Policy and some minor adjustments associated with issues involving the calculation of past response costs and interest, the obligations under the Consent Decree will result in the complete reimbursement to the United States for all of its past costs incurred in connection with the Site and the complete implementation of the OU 1 remedial action and payment of all Future Response Costs (as

defined in the Consent Decree) to be incurred by the United States in connection with the implementation of the OU 1 remedial action. Thus, the proposed Consent Decree is reasonable.

Finally, the settlement is consistent with the public interest and furthers the goals of CERCLA in important respects. CERCLA was enacted "to ensure prompt and efficient cleanup of hazardous waste sites and to place the costs of those cleanups on the PRPs." *Akzo Coatings of Am.*, 949 F.2d at 1417. As discussed above, Settling Performing Defendants agreed to address the contamination at the Site, the Settling Non-Performing Defendants agreed to pay their fair share of costs as determined by the allocation, plus an appropriate premium, and the Settling Owner Defendant agreed to establish institutional controls to ensure that the remedy remain protective. Thus, the settlement facilitates an expeditious cleanup of this hazardous waste site, holds the Settling Performing Defendants responsible for the cleanup, and compensates the United States for response costs incurred, thereby serving the public interest and the goals underlying CERCLA.

## IV. CONCLUSION

For the reasons set forth in this Memorandum in Support of the Motion to Enter the Proposed Consent Decree, the United States respectfully submits that the proposed settlement is fair, reasonable and consistent with the goals of CERCLA, and, therefore, requests that the Court grant the underlying Motion by approving and entering the proposed Consent Decree as a final

judgment.

Respectfully submitted this the 11th day of April, 2014.

                            ROBERT G. DREHER
                            Acting Assistant Attorney General
                            Environment and Natural Resources Division
                            United States Department of Justice

                            /s/ *Steven D. Ellis*
                            STEVEN D. ELLIS
                            Senior Counsel
                            Environmental Enforcement Section
                            Environment and Natural Resources Division
                            U.S. Department of Justice
                            P.O. Box 7611
                            Ben Franklin Station
                            Washington, D.C. 20044
                            (202) 616-6515
                            Steven.Ellis@usdoj.gov


                            /s/ *Daniel R. Dertke*
                            DANIEL R. DERTKE
                            Senior Attorney
                            Environmental Defense Section
                            Environment and Natural Resources Division
                            U.S. Department of Justice
                            P.O. Box 7611
                            Ben Franklin Station
                            Washington, D.C. 20044
                            (202) 514-0994
                            Daniel.Dertke@usdoj.gov

CARTER M. STEWART
                                        United States Attorney
                                        Southern District of Ohio


                                        MARGARET SCHUTTE
                                        Bar No. 0078968
                                        Assistant United States Attorney
                                        Southern District of Ohio
                                        200 West Second Street
                                        Dayton, Ohio 45402
                                        (937) 225-2910
                                        margaret.schutte@usdoj.gov

OF COUNSEL:

MARIA GONZALEZ
Associate Regional Counsel
U.S. Environmental Protection Agency - Region 5
77 W. Jackson Blvd. (C-14J)
Chicago, Illinois  60604